COMMISSIONER OF INSURANCE v ARCILIO

Docket No. 187813. Submitted May 9, 1996, at Lansing. Decided January 10, 1997, at 9:00 A.M.

The Commissioner of Insurance, who successfully had petitioned the Ingham Circuit Court for appointment pursuant to the insurers rehabilitation and liquidation act (IRLA), MCL 500.8101 *et seq.*; MSA 24.18101 *et seq.*, as the rehabilitator of Confederation Life Insurance Company (CLIC) after a deficiency developed in assets required to be in a trust under MCL 500.431a-c; MSA 24.1431(a)-(c), sought an injunction against three class actions filed in federal courts in New York and Georgia by Reynaldo Arcilio, Isadore Levy, and Anthony V. Montalto against the former directors and officers of CLIC and others. The class-action plaintiffs alleged and sought damages for common-law fraud, negligent misrepresentation, and violation of federal securities laws against the former directors and officers of CLIC, all of whom were covered by directors' and officers' liability insurance. The Ingham Circuit Court, Thomas L. Brown, J., enjoined the class actions with respect to the claims of fraud and misrepresentation, but not the claim of federal securities violations, against the former directors and officers of CLIC. Arcilio, Levy, and Montalto appealed by leave granted.

The Court of Appeals *held*:

1. The Supremacy Clause of the United States Constitution, US Const, art VI, cl 2, does not preclude the Ingham Circuit Court from enjoining the class-action claims of fraud and misrepresentation. The McCarran-Ferguson Act, 15 USC 1011 *et seq.*, reversed the normal relationship between state and federal law with regard to the regulation of insurance by establishing a rule that state laws enacted for the purpose of regulating the business of insurance, the IRLA being one such state law, do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise.

2. The class actions are proceedings in rem, not in personam. Under *Donovan v City of Dallas*, 377 US 408; 84 S Ct 1579; 12 L Ed 2d 409 (1964), state and federal courts do not interfere with or try to restrain each other's proceedings, except for proceedings in rem or quasi in rem. In such cases, the state or federal court having custody of such property has exclusive jurisdiction to proceed. The

choses in action represented by the class-action claims of fraud and misrepresentation are part of CLIC's assets, title over which vested in the Commissioner of Insurance upon the issuance of the rehabilitation order and which must be administered by the commissioner under the general supervision of the Ingham Circuit Court.

3. Section 8114 of the IRLA, MCL 500.8114; MSA 24.18114, authorizes the Commissioner of Insurance, as rehabilitator of an insolvent insurer, to pursue causes of action on behalf of the insolvent insurer and all policyholders of the insolvent insurer.

4. CLIC is a mutual insurance company, and its policyholders, in addition to being its insureds, are also its owners. Thus, the Commissioner of Insurance is authorized under § 8114(3) of the IRLA, MCL 500.8114(3); MSA 24.18114(3), to bring suit on behalf of CLIC policyholders on the basis of their status as insurers.

5. The class-action claims allege a type of personal injury that can be pursued by the Commissioner of Insurance as the rehabilitator of CLIC, and the commissioner has commenced a suit on behalf of all policyholders against most of the same defendants in the class actions. The continuation of the class-action plaintiffs' claims would result in wasteful and duplicative litigation that would run the risk of potentially conflicting outcomes.

6. The factual determination whether the class-action plaintiffs' insurance products are "securities" within the meaning of federal law is within the exclusive jurisdiction of the federal courts. To the extent the Ingham Circuit Court injunction precluded such a determination from being made, it is dissolved. In the event that the federal courts determine that the insurance products at issue are not securities under federal law, all the claims raised in the class actions are properly subject to the Ingham Circuit Court injunction.

7. FR Civ P 23, pursuant to which the class-action plaintiffs claim a right to certify a class action not subject to state court injunction, provides for a procedural right, not a substantive right, and may be preempted by the IRLA.

8. The Ingham Circuit Court's exercise of limited personal jurisdiction over the class-action plaintiffs does not violate due process and is authorized under Michigan's long-arm statute, MCL 600.705; MSA 27A.705. Sufficient minimum contacts exist between the State of Michigan and the class-action plaintiffs that the exercise of limited personal jurisdiction does not offend traditional notions of fair play and substantial justice. Where the exercise of personal jurisdiction does not offend due process, it does not violate the long-arm statute.

9. Section 8115(1) of the IRLA, MCL 500.8115(1); MSA 24.18115(1), which directs the rehabilitator to seek stays in actions pending outside Michigan immediately after the rehabilitation order is entered, does not serve to invalidate the injunction in this case. The class actions were not pending at the time the rehabilitation order was entered, and § 8115(1) does not limit the rehabilitator's powers to seek injunctions against actions filed after the entry of the rehabilitation order.

10. The class-action plaintiffs' contention that the Commissioner of Insurance failed to demonstrate irreparable harm that justifies an injunction is without merit. Section 8105(1)(k) of the IRLA, MCL 500.8105(1)(k); MSA 24.18105(1)(k), authorizes the Commissioner of Insurance, as the rehabilitator of an insolvent insurer, to seek, and the Ingham Circuit Court to grant, an injunction against threatened or contemplated action that might lessen the value of the insurer's assets or prejudice the rights of policyholders and the administration of a proceeding under the IRLA.

Affirmed.

1. INSURANCE — COMMISSIONER OF INSURANCE — INSURERS REHABILITATION AND LIQUIDATION ACT — INJUNCTIONS.

   The Commissioner of Insurance, as the rehabilitator of an insolvent alien insurance company whose state of entry is Michigan, is authorized by the insurers rehabilitation and liquidation act to seek injunctive relief in the Ingham Circuit Court against the continuation of a class action brought in a federal court after the entry of the rehabilitation order by policyholders who are not Michigan residents and who seek monetary damages against directors and officers of the insurer for alleged fraud and misrepresentation (MCL 500.8101[2], 500.8105, 500.8114[3]; MSA 24.18101[2], 24.18105, 24.18114[3]).

2. INSURANCE — INSURERS REHABILITATION AND LIQUIDATION ACT — NONRESIDENT POLICYHOLDERS — INGHAM CIRCUIT COURT — LIMITED PERSONAL JURISDICTION.

   The Ingham Circuit Court, in its supervision pursuant to the insurers rehabilitation and liquidation act of the rehabilitation by the Commissioner of Insurance of an insolvent alien insurance company whose state of entry is Michigan, properly exercises limited personal jurisdiction over policyholders who are not Michigan residents in enjoining the policyholders from maintaining a class action in federal court for monetary damages against the directors and officers of the insurer for alleged fraud and misrepresentation (MCL 500.8105, 600.705; MSA 24.18105, 27A.705).

*Bodman, Longley & Dahling LLP* (by *James J. Walsh* and *Sarah Heisler Gidley*), and *Cadwalader, Wickersham & Taft* (by *Mitchell I. Sonkin* and *Gregory M. Petrick*), for the Commissioner of Insurance.

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.* (by *Bernard Finn*), *Milberg Weiss Bershad Hynes & Lerach* (by *Melvin I. Weiss, Jerome M. Congress,* and *Brad N. Friedman*), and *Arthur R. Miller,* for Reynaldo Arcilio, Isadore Levy, and Anthony V. Montalto.

Before: HOLBROOK, JR., P.J., and SAAD and W. J. GIOVAN*, JJ.

PER CURIAM. On August 11, 1994, pursuant to this state's insurers rehabilitation and liquidation act (IRLA), MCL 500.8101 *et seq.*; MSA 24.18101 *et seq.*, the Commissioner of Insurance petitioned the Ingham Circuit Court for an order of rehabilitation and an ex parte order for seizure of the assets of Confederation Life Insurance Company (CLIC), the United States branch of a Canadian insurance company whose state of entry was Michigan.[1] The court granted the petition on August 16, 1994, placing CLIC's business in the United States in rehabilitation and appointing petitioner as rehabilitator.

As a condition of being permitted to sell insurance in the United States, CLIC-Canada was required to establish and maintain on deposit in a trust sufficient assets to satisfy the liabilities owed to policyholders in this country. See MCL 500.431a-c; MSA 24.1431(a)-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] In this opinion, CLIC's United States branch will be referred to as CLIC, while the Canadian corporation will be referred to as CLIC-Canada.

(c). Precipitating CLIC's financial instability was the 1991 removal of more than $600 million in government securities and cash from the trust by the financial management division of CLIC-Canada. CLIC-Canada allegedly accomplished the scheme by replacing the funds with promissory notes and then filing statements with the Michigan Insurance Bureau that failed to disclose the condition of the trust.

On September 27, 1994, the Ingham Circuit Court entered an amended and restated order of rehabilitation, which elaborated on petitioner's powers and responsibilities as rehabilitator. The restated order granted petitioner exclusive control of all CLIC's assets in the United States, including causes of action, and contained a general injunction against "bringing, maintaining or further prosecuting any action at law, suit in equity, special or other proceeding against Confederation [CLIC-Canada] or Confederation U.S., the Estate in Rehabilitation or against the Commissioner and his successors in office." In addition, the order prohibited any person from "disturbing or interfering in any manner with the Rehabilitator's occupation, use, possession, title and rights to the Estate in Rehabilitation, and from disturbing or interfering in any manner with the conduct of the rehabilitation . . . ." The order also provided:

> Those persons, corporations, partnerships, associations and all other entities are hereby enjoined and restrained from wasting transferring, selling, concealing, terminating, cancelling, destroying, disbursing, disposing of, or assigning any assets, contracts, causes of action, funds, records or other property of any nature of Confederation . . . .

Subsequently, in October 1994, Reynaldo Arcilio, Isadore Levy, and Anthony V. Montalto, none of

whom are residents of Michigan, filed three separate class actions against CLIC's former directors and officers, as well as an independent auditor and several private insurance-rating agencies, seeking monetary damages for common-law fraud, negligent misrepresentation, and unlawful federal securities transactions.[2] One action was filed in the Supreme Court of the State of New York in New York County, a second was filed in the United States District Court for the Northern District of Georgia, and a third was filed in the Georgia Superior Court in Cobb County. In each of the class actions, the plaintiffs purported to represent policyholders who purchased or renewed policies or annuities issued by CLIC or by Confederation Life Insurance and Annuity Company (CLIAC), a wholly owned subsidiary of CLIC based in Atlanta, Georgia, during the period from May 27, 1993, through August 12, 1994. According to the complaint in the federal court action, Arcilio and Montalto pur-

---

[2] In addition to the three class actions in which the present respondents were the named plaintiffs, a fourth class action was filed in the Superior Court of Essex County, New Jersey, on behalf of Allen and Shelley Glushakow, naming CLIC, Confederation Life Insurance and Annuity Company (CLIAC), former officers and directors of CLIC, and Ernst & Young, CLIC's auditor, as defendants and alleging that the Glushakows were defrauded when they purchased CLIAC insurance policies. See *Glushakow v Confederation Life Ins Co*, No. 94-4201 (D NJ, December 5, 1994); 1994 US Dist Lexis. After the action was removed to the federal district court in New Jersey, the court stayed the action on two separate grounds. The first basis for the stay was "the strong policy of the state of New Jersey to defer to the rehabilitation actions of other states" and "the principle of comity." The court also found that the *Burford [v Sun Oil Co*, 319 US 315; 63 S Ct 1098; 87 L Ed 1424 (1943)] abstention doctrine applied.

A fifth class action was filed in the United States District Court for the Northern District of Georgia on behalf of Rosemary Oloffson and Marianne Snyder. That complaint also named as defendants CLIC's former officers and directors and alleged breach of fiduciary duty. These plaintiffs apparently withdrew their federal action and intend to intervene in respondents' Georgia federal court action.

chased whole life insurance policies from CLIC, while Levy purchased a single-premium deferred annuity. These persons have conceded that their goal in bringing these lawsuits was to reach the proceeds of four directors' and officers' liability policies (D&O policies) that, in total, provided $50 million of coverage in Canadian funds.

On May 3, 1995, petitioner moved for an injunction pursuant to MCL 500.8105; MSA 24.18105[3] on the grounds that the cause of action against CLIC's former officers and directors was an asset of the rehabilita-

---

[3] Section 8105 provides:

(1) A receiver appointed in a proceeding under this chapter may at any time apply for, and the circuit court for Ingham county may grant, a restraining order, preliminary injunction, permanent injunction, and any other order as may be considered necessary and proper to prevent any of the following:

(a) The transaction of further business by the insurer.

(b) The transfer of property.

(c) Interference with the receiver or with a proceeding under this chapter.

(d) Waste of the insurer's assets.

(e) Dissipation and transfer of bank accounts.

(f) The institution or further prosecution of any actions or proceedings.

(g) The obtaining of preferences, judgments, attachments, garnishments, or liens against the insurer, its assets, or its policyholders.

(h) The levying of execution against the insurer, its assets, or its policyholders.

(i) The making of a sale or deed for nonpayment of taxes or assessments that would lessen the value of the insurer's assets.

(j) The withholding from the receiver of books, accounts, documents, or other records relating to the insurer's business.

(k) Other threatened or contemplated action that might lessen the value of the insurer's assets or prejudice the rights of policyholders, creditors, or shareholders, or the administration of a proceeding under this chapter.

(2) The receiver may apply to a court outside of the state for the relief described in subsection (1).

tion estate, that the $50 million of coverage provided by the D&O policies was a potential source of funding for all policyholders, and that the suits by respondents Arcilio, Levy, and Montalto were disruptive to the administration of the estate.[4] On June 26, 1995, the Ingham Circuit Court entered an injunction enjoining "all persons or entities" from commencing or continuing "any claims or actions" against CLIC's former or present directors and officers, its independent auditor Ernst & Young, or Harris Trust & Savings Bank "for actions arising out of business or transactions with" CLIC, and enjoining any attempt to represent CLIC "policyholders or creditors in any class actions or in any other lawsuit in any forum." The court specifically exempted from the scope of the injunction the pursuit of claims "personal to such persons or entities alone and which cannot be pursued by the Rehabilitator." Also exempted from the scope of the injunction were respondents' federal securities claims, provided those claims were brought in respondents' individual capacities. Respondents sought rehearing, which the lower court denied. This Court granted respondents' application for leave to appeal.

---

[4] Subsequently, on June 28, 1995, petitioner filed a complaint in the Ingham Circuit Court on behalf of the estate in rehabilitation against the former directors and officers of CLIC, Ernst & Young (CLIC's auditor) and Harris Trust & Savings Bank (trustee of the trust funds established for the protection of policyholders in the United States), claiming breach of trust, negligence, breach of fiduciary duty, conversion, common-law fraud, professional malpractice, breach of contract, and negligent misrepresentation.

I

A

Respondents first argue that the Ingham Circuit Court was precluded either by the Supremacy Clause of the United States Constitution, art VI, cl 2, or by United States Supreme Court precedent from enjoining their federal court action based on individual and class-action claims of common-law fraud and misrepresentation. We find no merit to this claim.

Chapter 81 of the Insurance Code of 1956 governs the supervision, rehabilitation, and liquidation of delinquent insurers. MCL 500.8101 *et seq.*; MSA 24.18101 *et seq.* Congress has declared, through its enactment of the McCarran-Ferguson Act, 15 USC 1011 *et seq.*, that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance . . . ." 15 USC 1012(b). Recently, in *United States Dep't of Treasury v Fabe*, 508 US 491, 507; 113 S Ct 2202; 124 L Ed 2d 449 (1993), the Supreme Court stated that § 2(b) of the McCarran-Ferguson Act reverses the normal relationship between state and federal law with regard to the regulation of insurance, establishing "a rule that state laws enacted 'for the purposes of regulating the business of insurance' do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise." *Id.* Thus, a state law, such as Michigan's IRLA, that has as its purpose the regulation of the business of insurance preempts conflicting federal law.

Respondents argue that this case is controlled by *Donovan v City of Dallas*, 377 US 408; 84 S Ct 1579;

12 L Ed 2d 409 (1964), and its progeny. In *Donovan*, the United States Supreme Court held, at 412:

> Early in the history of our country a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings. That rule has continued substantially unchanged to this time. An exception has been made in cases where a court has custody of property, that is, proceedings in rem or quasi in rem. In such cases this Court has said that the state or federal court having custody of such property has exclusive jurisdiction to proceed. *Princess Lida v Thompson*, 305 US 456, 465-468; 59 S Ct 275; 83 L Ed 285 (1939). In *Princess Lida* this Court said "where the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other." *Id.* at 466.

See also *General Atomic Co v Felter*, 434 US 12, 18; 98 S Ct 76; 54 L Ed 2d 199 (1977).

Respondents assert that the Ingham Circuit Court could not enjoin their pursuit of common-law claims of fraud and negligent misrepresentation in federal court because those claims were brought against CLIC's former directors and officers and others, not against CLIC itself, and because the source of recovery, i.e., the proceeds of the D&O policies, is not a part of the rehabilitation res. Hence, respondents assert that their federal claims are in personam and the exception for in rem or quasi in rem claims expressed in *Donovan* is inapplicable. While these arguments have superficial appeal, we are not persuaded.

Section 8113(1) of the IRLA, MCL 500.8113(1); MSA 24.18113(1) under which petitioner was appointed as rehabilitator, authorizes the "rehabilitator to take immediate possession of the assets of the insurer, and

to administer them under the court's general supervision." Once an order of rehabilitation is issued by the court, "the insurer shall by operation of law vest title to all assets of the insurer in the rehabilitator." The act defines an insolvent insurer's "general assets" as including "all property, real, personal, or otherwise." MCL 500.8103(g); MSA 24.18103(g). In Michigan, " '[p]ersonal property' connotes intangible as well as tangible personal property and must include choses in action." *Royal Oak Twp v City of Berkley*, 309 Mich 572, 580; 16 NW2d 83 (1944). Here, respondents argue that they are not seeking to attach or interfere with an asset of the rehabilitation res because they intend to satisfy any potential judgment with the proceeds of the D&O policies, which petitioner and the circuit court concede are not assets of the estate. Respondents' argument misses the point, however, because it is the tort claim itself (i.e., a chose in action) that is an asset of the rehabilitation res. Respondents' federal court action usurps the rehabilitator's exclusive authority to pursue such claims.

Indeed, § 8114(3) states:

> If it appears to the rehabilitator that there has been criminal or tortious conduct or breach of a contractual or fiduciary obligation detrimental to the insurer by an officer, manager, agent, broker, employee, or other person, he or she may pursue *all appropriate legal remedies on behalf of the insurer.* [MCL 500.8114(3); MSA 24.18114(3).]

Hence, the general assets of the insurer clearly includes causes of action based in tort against a third party whose breach of the appropriate standard of care is alleged to have defrauded the insurer and its policyholders.

Although respondents contend that petitioner is only authorized by statute to maintain suits "on behalf of the insurer" under § 8114(3), this narrow reading of the statute is at odds with its declared purpose and has been rejected in other jurisdictions that have adopted some version of the model act.[5] See *Foster v Peat Marwick Main & Co*, 138 Pa Commw Ct 147; 587 A2d 382 (1991); *In re Liquidation of Integrity Ins Co*, 240 NJ Super 480; 573 A2d 928 (1990); *Corcoran v Frank B Hall & Co, Inc*, 149 AD2d 165; 545 NYS2d 278 (1989). See also *In re Liquidation of American Mutual Liability Ins Co*, 417 Mass 724; 632 NE2d 1209 (1994). In *Foster, supra* at 153-154, the court construed Pennsylvania's counterpart to Michigan's IRLA to allow a rehabilitator to sue on behalf of an insolvent insurer's policyholders where the injuries suffered were common to all policyholders. Peat Marwick argued, as respondents do here, that under Pennsylvania's statute only a liquidator may bring claims on behalf of policyholders and creditors. According to Peat Marwick's interpretation of

---

[5] Notably, in 1996 PA 117, effective March 6, 1996, the Legislature amended § 8114(3) to delete the phrase "on behalf of the insurer." The act also substantially modified § 8114(2) to provide:

> The rehabilitator may take such action as he or she considers necessary or appropriate to reform and revitalize the insurer including, but not limited to, the powers in section 8121(1)(f), (l), (m), (r), and (u). The rehabilitator has all the powers of the directors, officers, and managers, whose authority shall be suspended, except as they are redelegated by the rehabilitator. The rehabilitator has full power to direct and manage, to hire and discharge employees subject to any contract rights they may have, and to deal with the property and business of the insurer.

The clear import of these amendments was to clarify, rather than limit or expand, the rehabilitator's broad authority to take whatever action is deemed necessary or appropriate to reform and revitalize the insurer.

the statute, the rehabilitator was limited to bringing claims "on behalf of the insurer" for injury to the insurer. *Id.* at 152; see also MCL 500.8121(m); MSA 24.18121(m), MCL 500.8114(3); MSA 24.18114(3). The *Foster* court disagreed, stating at 155:

> [T]here is ample authority for overruling Peat Marwick's objection brought on the ground that the Rehabilitator has failed to assert a claim for relief. In addition to the estate's claims, which Peat Marwick concedes are properly brought by the Rehabilitator, Article V gives [the rehabilitator] broad, remedial powers to insure the protection of persons other than the estate. The weight of authority in other jurisdictions militates toward a determination that the Rehabilitator has such standing.

Section 8114(2) of the IRLA authorizes a rehabilitator to "take such action as he or she considers necessary or appropriate to reform and revitalize the insurer." Because the Legislature has mandated that the IRLA be liberally construed to protect the interests of the insureds and the public by avoiding piecemeal litigation and the resulting potential for inequitable distribution of the assets, MCL 500.8101(2); MSA 24.18101(2), § 8114 must be construed to include the authority to pursue causes of action on behalf of all policyholders. See also *Trosper v Ingham Circuit Judge*, 293 Mich 438, 440; 292 NW 360 (1940) (in Michigan, "the common interest of all policyholders is, by the insurance law, intrusted to the commissioner of insurance").

Moreover, because CLIC is a mutual insurance company, its policyholders (including respondents here) are both insureds and insurers, given their ownership interest in the company. See 43 Am Jur 2d, Insurance, §§ 65, 73. Consequently, even in the absence of the

liberal interpretation mandated by § 8101(2), petitioner is specifically authorized by § 8114(3) to take appropriate legal action against any person for tortious or criminal conduct or for breach of a contractual or fiduciary obligation on behalf of respondents on the basis of their status as insurers. The amended and restated order of rehabilitation authorizing petitioner to "bring or defend any action . . . or other legal proceeding . . . on behalf of Confederation . . . in any court" authorizes petitioner to bring suit on behalf of all policyholders, who collectively constitute the ownership of CLIC. Thus, respondents' contention that petitioner lacked standing to bring suit on behalf of CLIC's policyholders is without merit.

The rehabilitation order issued by the circuit court specifically stated that "the injunction herein granted shall not enjoin persons or entities . . . from individually commencing, continuing or otherwise pursuing any claims or actions . . . personal to such persons or entities alone and which cannot be pursued by the Rehabilitator." Thus, respondents have not been enjoined from pursuing their individual, in personam tort claims. The authority relied on by respondents, however, undermines their position that their claims are personal and cannot be asserted by petitioner on their behalf. In *Cotten v Republic Nat'l Bank of Dallas*, 395 SW2d 930, 941 (Tex Civ App, 1965), cited in respondents' brief on appeal, the court stated:

> But some actions for fraud are by their nature personal to each creditor, or each stockholder, or each policyholder, and the receiver may not then maintain a suit in his representative capacity for their joint benefit. In such case each claimant and he alone may bring and maintain suit himself, for the action is personal . . . . For example, one who

> proves that he relied on false representations as to the corporation's financial condition and was thereby induced to extend credit to the corporation, or to purchase stock in it, or to take out an insurance policy with it, must in his own name maintain a separate suit for his damages against the person who uttered the fraudulent representations.

Hence, unlike "injuries to individuals *over and above* or *not common to* those injuries suffered by all policyholders," which warrant an individual action for fraud or misrepresentation, claims based on injuries common to all policyholders must be maintained by the rehabilitator in his representative capacity for their collective benefit. See *Foster, supra* at 154 (emphasis added). Here, respondents' federal claims allege the type of personal injury that can be pursued by the rehabilitator on behalf of the rehabilitation estate. Moreover, we note that petitioner has commenced a suit on behalf of all policyholders against most of the same parties named in respondents' federal actions in Georgia. Accordingly, continuation of respondents' common-law claims would result in wasteful and duplicative litigation that would run the risk of potentially conflicting outcomes. Consequently, we affirm the circuit court's order enjoining respondents from pursuing their common-law claims for fraud and misrepresentation in the federal court.

B

Respondents next argue that the Ingham Circuit Court was precluded from enjoining their attempt to certify a class action in the federal court regarding federal securities violations because the insurance products purchased by respondents constitute "securities," which involve an area of law over which the

federal courts have exclusive jurisdiction. 15 USC 78aa.

In *Riley v Simmons*, 45 F3d 764 (CA 3, 1995), the Third Circuit Court of Appeals considered a factually similar case in which purchasers of annuities from an insolvent insurer sought to certify a class action against the former officers and directors of the insurer for violations of federal securities laws. The defendants had moved in the district court to dismiss the complaint on grounds of abstention, among others, or alternatively to stay the action until the conclusion of the insurance commissioner's separate rehabilitation proceeding in state court. The commissioner moved to intervene and join the defendants' motion to dismiss the complaint or to issue a stay. The district court granted the commissioner's motion to intervene and dismissed the complaint on the basis of abstention, finding that the plaintiffs' federal securities claims were essentially the equivalent of the common-law fraud claims being pursued by the commissioner in the state rehabilitation proceeding. *Id.* at 766, 771-772. In reversing the order of dismissal, the Court of Appeals initially noted that it remained to be determined whether in fact the plaintiffs' annuities were "securities," and that "[t]he Securities Exchange Act, 15 USC 78aa, granted federal courts exclusive jurisdiction over Plaintiffs' Rule 10b-5 claims and necessarily deprives New Jersey state courts of jurisdiction over that claim." *Id.* at 773. The court expressed concern that allowing the federal action to proceed would likely impede the commissioner's efforts to marshal the assets of the insurer and equitably distribute them among all claimants, and that such action would inevitably lead to "a race for collection"

of a $20 million D&O liability policy, the proceeds of which would be significantly diminished after the payment of the defendants' legal fees. *Id.* at 775. The court stated:

> We, like the district court, are troubled by diversion of funds from Mutual Benefit and its policyholders to the cost of litigation that benefits only one class of persons injured by the acts of the Company's officers and directors. A remedy for that problem, however, is beyond the power of this panel under existing statutory law and what we believe is binding Supreme Court precedent and circuit procedure. Governing case law seems to us to make it clear that mere interference with the Commissioner's ability to marshall [sic] the Company's assets cannot justify *Burford* [*v Sun Oil Co,* 319 US 315; 63 S Ct 1098; 87 L Ed 1424 (1943)] abstention over claims exclusively subject to federal jurisdiction. [*Id.* at 776.]

In this case, as in *Riley,* the factual determination whether respondents' insurance products are "securities" within the meaning of federal law remains to be made. This Court is without jurisdiction to make that determination. See *Cottler v Inter-County Orthopaedic Ass'n,* 526 F2d 537, 542 (CA 3, 1975). See also *Central States, Southeast & Southwest Areas Health & Welfare Fund v Old Security Life Ins Co,* 600 F2d 671, 677 (CA 7, 1979) (Missouri's insurer insolvency act "cannot be interpreted as precluding a party from pursuing a congressionally created federal claim in the only courts able to provide affirmative relief on that claim"). While we echo the concerns of the *Riley* court, we also are compelled to hold that, to the extent the Ingham Circuit Court injunction precluded such a determination from being made, it is dissolved. We further conclude that, in the event the federal courts determine that respondents' insurance prod-

ucts are not securities within the meaning of federal securities law, respondents' putative class-action claim falls within the ambit of their common-law fraud and misrepresentation claims, which were determined in Part IA of this opinion to be enjoined under the circuit court injunction.

C

Respondents further argue that the right to certify a class action under Fed.R Civ P 23 is a federal right that cannot be enjoined by a state court. We disagree.

Because Rule 23 does not specifically relate to the business of insurance, and because petitioner was designated by § 8114(3) as the sole representative of the insurer, the federal rule is preempted by conflicting provisions of Michigan insurance law. See 15 USC 1012(b). Moreover, the authority relied on by respondents undercuts their assertion of a substantive right to certify a class in federal court, because the United States Supreme Court recognized, in *Deposit Guaranty Nat'l Bank v Roper*, 445 US 326, 331, 332; 100 S Ct 1166; 63 L Ed 2d 427 (1980), that the right of a litigant to employ Rule 23 in appropriate circumstances is a procedural right only, ancillary to the litigation of substantive claims.

D

In conclusion, we find that the in rem exception to the rule of *Donovan* is controlling insofar as respondents' pursuit of individual and class-action claims for common-law fraud and misrepresentation usurps an asset of the rehabilitation estate that is within the exclusive control of the rehabilitator. The circuit court injunction is affirmed with respect to respon-

dents' common-law fraud and misrepresentation claims. With respect to respondents' federal securities claims, a determination remains to be made whether in fact the insurance products purchased by respondents constitute securities within the meaning of federal law. This factual determination is within the exclusive jurisdiction of the federal court to make. Finally, under § 2(b) of the McCarran-Ferguson Act, any federal right of respondents to certify a class action under Rule 23 is preempted by the authority conferred on petitioner by MCL 500.8114(3); MSA 24.18114(3) to act as the sole representative of the policyholders.

II

Next, respondents argue that as residents of Georgia they were not subject to the limited personal jurisdiction of a Michigan circuit court. We disagree.

In deciding whether personal jurisdiction may be asserted, a court must generally conduct a two-step inquiry: first, whether exercising personal jurisdiction would violate the Due Process Clause and, second, whether the exercise of personal jurisdiction over the individual nonresident defendant is authorized by the Michigan long-arm statute, MCL 600.705; MSA 27A.705.[6] See *Khalaf v Bankers & Shippers Ins Co*,

---

[6] Michigan's long-arm statute, MCL 600.705; MSA 27A.705, provides in pertinent part:

The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the state.

404 Mich 134, 146; 273 NW2d 811 (1978); *Green v Wilson*, 211 Mich App 140, 142; 535 NW2d 233 (1995). Because our long-arm statute has been interpreted to grant the broadest basis for jurisdiction consistent with due process, *Schneider v Linkfield*, 389 Mich 608, 616; 209 NW2d 225 (1973), where it is found that personal jurisdiction does not offend due process, it consequently cannot violate this state's long-arm statute. See *Burger King Corp v Rudzewicz*, 471 US 462, 471; 105 S Ct 2174; 85 L Ed 2d 528 (1985).

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which the person has established no meaningful "contacts, ties, or relations." *Int'l Shoe Co v Washington*, 326 US 310, 316, 319; 66 S Ct 154; 90 L Ed 95 (1945). The requirement of minimum contacts serves to protect a defendant from litigating in a distant forum and to ensure that a state does not extend its judicial power beyond the limits imposed by our federal system of government. *Jeffrey v Rapid American Corp*, 448 Mich 178, 186; 529 NW2d 644 (1995). Here, because of the nature of the controversy, we are as concerned with respondents' individual liberty interests as we are with the concept of federalism. In order to satisfy the requirements of due process in this case, the nonresident respondents must have had minimum contacts with the State of Michigan such that enforcement of the injunction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co, supra* at 316. In *Jeffrey, supra* at 186, our Supreme Court, quoting *Modzy v Lopez*, 197 Mich App 356, 359; 494 NW2d 866 (1992), distilled the relevant considerations in determining whether sufficient minimum contacts exist to

justify the exercise of limited personal jurisdiction over a nonresident defendant: (1) the defendant must be found to have purposefully availed itself of the privilege of conducting activities in Michigan, (2) the cause of action must arise from those activities, and (3) the exercise of jurisdiction must be reasonable. However, "[t]he primary focus of personal jurisdiction is on 'reasonableness' and 'fairness.' Each case, therefore, must turn on its own merits." *Jeffrey, supra* at 186.

With respect to interstate contractual obligations, the United States Supreme Court has emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other state for the consequences of their activities. *Travelers Health Ass'n v Virginia*, 339 US 643, 647; 70 S Ct 927; 94 L Ed 1154 (1950); *Rudzewicz, supra* at 473. Recognizing that physical presence in the forum state is not required to assert personal jurisdiction, the Supreme Court has found it to be an "inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail or wire communications across state lines." *Id.* at 476.

Here, respondents entered into a contract of insurance with CLIC, an insurance company domiciled in Michigan and subject to Michigan law regarding insurer insolvency, rehabilitation, and liquidation. See MCL 500.431b; MSA 24.1431(b), MCL 500.8102; MSA 24.18102. Although respondents are not commercial actors as in the usual case, they deliberately reached out beyond their home state's borders and purchased long-term insurance products from an alien insurer

whose state of entry was Michigan. *McGee v Int'l Life Ins Co*, 355 US 220, 223; 78 S Ct 199; 2 L Ed 2d 223 (1957). Consequently, respondents purposefully availed themselves of the protection of Michigan law regarding insolvent and delinquent insurers. See *Rudzewicz, supra* at 476; *Khalaf, supra* at 153. Indeed, CLIC represented, in marketing materials provided to United States policyholders, that it was a stable company in part because of the special protections provided by the trust fund that it was required to establish under Michigan law. The second prong of the inquiry is satisfied because petitioner's request for injunctive relief arose out of the contractual activities connecting respondents to this state. But for their status as policyholders of an alien insurer domiciled in Michigan, respondents would have no standing to maintain their federal action. Accordingly, respondents' minimum contacts with Michigan provided "reason to expect to be haled before" Michigan courts. *Schaffer v Heitner*, 433 US 186, 216; 97 S Ct 2569; 53 L Ed 2d 683 (1977).

Where, as here, the threshold requirement of minimum contacts is satisfied, a court must determine whether the exercise of personal jurisdiction comports with fair play and substantial justice. Given that the injunction at issue did not require respondents' physical presence in this state, and that modern communication devices provided for nearly instantaneous exchange of litigation-related documents, we conclude that the exercise of personal jurisdiction by the circuit court did not unduly burden respondents' individual liberty interests. See *McGee, supra* at 222-223; *Rudzewicz, supra* at 477. Moreover, because of the pending state rehabilitation proceeding, the forum

state and the rehabilitator had a significant interest in obtaining the most efficient resolution of the controversy. *Jeffrey, supra* at 189. Given respondents' minimum contacts with Michigan and the significant public policies underlying the IRLA, any concern that the circuit court's assertion of personal jurisdiction over respondents implicated the concept of federalism is abated. Accordingly, the circuit court's exercise of limited personal jurisdiction over respondents pursuant to this state's long-arm statute did not offend due process.

III

Respondents next argue that the circuit court injunction was invalid because petitioner failed to petition the Georgia federal district court for a stay of the proceedings as provided by MCL 500.8115(1); MSA 24.18115(1). We disagree.

Section 8115 of the IRLA provides, in pertinent part:

(1) A court in this state before which an action or proceeding in which the insurer is a party, or is obligated to defend a party, is pending when a rehabilitation order against the insurer is entered shall stay the action or proceeding for 90 days and such additional time as is necessary for the rehabilitator to obtain proper representation and prepare for further proceedings. The rehabilitator shall take action respecting the pending litigation as he or she considers necessary in the interests of justice and for the protection of creditors, policyholders, and the public. *The rehabilitator shall consider immediately all litigation pending outside this state and shall petition the courts having jurisdiction over that litigation for stays if necessary to protect the insurer's estate.* [MCL 500.8115(1); MSA 24.18115(1) (emphasis added).]

Contrary to respondents' argument, we view § 8115(1) as expanding, rather than restricting, the authority of the rehabilitator to control all pending litigation involving the rehabilitation estate. Read in context, the rehabilitator is directed under § 8115(1) to seek stays in actions "pending" outside the state "immediately" after the rehabilitation order is entered. In this case, defendants' federal court actions were not "pending" at the time the rehabilitation order was first entered. Nothing in § 8115 limits petitioner's powers as rehabilitator to seek after the entry of a rehabilitation order appropriate injunctions in Michigan to prevent litigation against third parties in other courts that would disrupt or impede the rehabilitation proceeding. Such injunctions are consistent with the broad grant of power to the rehabilitator to do all things necessary to effectuate an orderly rehabilitation.

IV

Finally, respondents contend that the circuit court abused its discretion in issuing the injunction because petitioner failed to demonstrate the presence of irreparable injury. We find no abuse of discretion.

The granting of injunctive relief is within the sound discretion of the trial court, although the decision must not be arbitrary and must be based on the facts of the particular case. *Roy v Chevrolet Motor Car Co*, 262 Mich 663, 668; 247 NW 774 (1933). In determining whether to issue a preliminary injunction, the court must consider four factors: (1) harm to the public interest if an injunction issues, (2) whether harm to the applicant in the absence of temporary relief outweighs the harm to the opposing party if relief is

granted, (3) the strength of the applicant's demonstration that the applicant is likely to prevail on the merits, and (4) demonstration that the applicant will suffer irreparable injury if the relief is not granted. *Michigan State Employees Ass'n v Dep't of Mental Health*, 421 Mich 152, 157-158; 365 NW2d 93 (1984). In this case, respondents challenge only whether petitioner sufficiently demonstrated that irreparable injury would occur if the injunction was not issued.

The IRLA specifically authorizes a receiver to apply for, and the Ingham Circuit Court to grant, an injunction enjoining "threatened or contemplated action that might lessen the value of the insurer's assets or prejudice the rights of policyholders . . . or the administration of a proceeding under this chapter." MCL 500.8105(1)(k); MSA 24.18105(1)(k). Under this provision, the rehabilitator and the circuit court were expressly authorized by the Legislature to act to enjoin defendants' federal court action, which clearly constituted a threat to the rights of policyholders and to the orderly administration of the estate. Accordingly, we find no abuse of discretion by the circuit court in issuing the injunction.

The circuit court injunction is affirmed to the extent that it enjoins respondents' common-law fraud and misrepresentation claims. The circuit court was without jurisdiction to determine whether respondents had stated a claim for violation of federal securities law.