**Ann M. LaBARRE, individually, and on behalf of all persons similarity situated**

v.

**CREDIT ACCEPTANCE CORPORATION, a Michigan corporation; Bankers and Shippers Insurance Company, a foreign corporation; and First Lenders Insurance Services, Inc.**

No. 4–96–CV–528.

United States District Court, D. Minnesota, Fourth Division.

July 9, 1998.

Michael P. Malakoff, Malakoff Doyle & Finberg, Pittsburgh, PA, Thomas J. Lyons, Lyons & Assoc, St. Paul, MN, for Ann M. LaBarre.

David Arthur Ranheim, Vernle C. Durocher, Jr., Mark Alan Hubble, Dorsey & Whitney, Minneaplois, MN, for Credit Acceptance Corp.

Richard H. Krochock, Stephen K. Warch, Rider Bennett Egan & Arundel, Minneapolis, MN, for Bankers & Shippers Ins. Co.

James F. Hanneman, Maslon Edelman Borman & Brand, Minneapolis, MN, Harold S. Lippes, Bledsoe Schmidt Lippes & Adams, Jacksonville, FL, for First Lenders Ins. Services, Inc.

## ORDER

ROSENBAUM, District Judge.

The plaintiff financed the purchase of a used car in 1994. The defendants provided services, detailed below, relating to the financing. The plaintiff has decided that the defendants have violated various laws. Based on her own views, and without any apparent authorization by law, plaintiff has kept the vehicle, but stopped making the payments.

Defendants move to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). The Court heard oral argument on April 3, 1998. Based on the files, records, and proceedings herein, and for the reasons stated below, defendants' motions are granted.

## I. Background

This matter is before the Court on Rule 12 motions, and the Court presumes the following facts based on the pleadings. The plaintiff, Ann LaBarre, is a Minnesota resident who purports to represent an uncertified class of persons who purchased used automobiles in Minnesota pursuant to retail installment contracts. Defendant Credit Acceptance Corporation ("CAC") is a Michigan corporation specializing in financial services. Defendant Bankers and Shippers Insurance Company ("Bankers") is an insurance company licensed to sell property and casualty insurance in Michigan and other states. Defendant First Lenders Insurance Services, Inc., is a Florida corporation. Jurisdiction is properly premised on federal question and diversity grounds, pursuant to 28 U.S.C. §§ 1331 and 1332.

In October, 1994, plaintiff, Ann N. LaBarre, purchased a used automobile from L.B. Sales, Inc., d/b/a Continental Motors, pursuant to a retail installment contract. The purchase agreement showed that L.B. Sales was assigning the purchase contract to CAC. Since the vehicle was being financed on credit, the retail installment contract specifically required the purchaser to maintain insurance on the vehicle against property damage until the loan was repaid in full. The dealer, L.B. Sales, was named as the loss payee. The contract explicitly provided that plaintiff could obtain this insurance on her own, rather than obtaining it as a part of the financing package. In that case, the insurance was to be obtained at plaintiff's cost "from a company authorized to do business in Minnesota and which is reasonably acceptable to us [CAC]."

To offer this insurance option to customers, without customers having to seek it on their own, CAC purchased a master policy of insurance from Bankers & Shippers' managing general agent, First Lenders Insurance Services, Inc.

Plaintiff elected to obtain the insurance through CAC's master policy. She showed her willingness to do so by signing an "Information Election Form." This form notified plaintiff of the insurance requirement, and advised her she had the option of satisfying

the requirement by purchasing her own insurance. The form also notified plaintiff that limited physical damage insurance ("LPD") was available through CAC. The form defined limited physical insurance coverage, its coverage, and the fact that it may be financed in the retail installment contract. It also stated that she would be charged for the insurance premium.

The form stated, in bold print:

You should understand that "LPD" Insurance (1) is primarily designed to fulfill the insurance requirement in your contract and to protect CAC; (2) does not fulfill the requirements of any state financial responsibility, "no fault" or minimum liability insurance law; (3) does not afford you any personal injury, property damage liability, uninsured motorist, or medical payments coverage; and (4) does not ordinarily provide loss or damage payments to you personally. "LPD" insurance may provide limited benefit to you and you should read the notice of insurance which will be provided to you if you elect this coverage in order to fulfill your insurance requirement.

Having opted to purchase the insurance through CAC, plaintiff was mailed the Notice of Insurance. The Notice set forth the amount of the premium, the type of insurance provided, and the terms and conditions of the policy.

Plaintiff's complaint asserts violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), pursuant to 18 U.S.C. § 1962(c)–(d), by all defendants; interference with contract by all defendants; breach of contract by CAC; violations of the Minnesota Motor Vehicle Retail Installment Sales Act ("MVRISA") by CAC; and breach of fiduciary duty by CAC. Defendants move to dismiss the Complaint, arguing that plaintiff has failed to plead a claim upon which relief may be granted.

## II. *Discussion*

A court may not grant a motion to dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986). In assessing a motion to dismiss, a court "must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." *Id.; see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## A. *RICO Claims: Counts I and II*

The plaintiff alleges she was unlawfully required to secure limited property damage insurance. This allegation dooms her RICO claims. Counts I and II fail because the McCarran–Ferguson Act, 15 U.S.C. § 1012(b), places regulation of the business of insurance under the control of state, as opposed to federal, law.

The McCarran–Ferguson Act provides that:

No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance. . . .

15 U.S.C. § 1012(b).

The McCarran–Ferguson Act bars the application of any federal statute to insurance when: (1) the federal statute does not specifically relate to the business of insurance; (2) there is a state statute that was enacted for the purpose of regulating the business of insurance; and (3) application of the statute would invalidate, impair, or supersede the state regulatory scheme. *United States Dept. of Treasury v. Fabe*, 508 U.S. 491, 501, 113, S.Ct. 2202, 2208 124 L.Ed.2d 449 (1993).

Under the three-prong test derived from *Fabe*, plaintiff's RICO claim must be dismissed. First, RICO contains no specific reference to insurance, and the Eighth Circuit Court of Appeals has determined that RICO does not relate to the insurance business. *Doe v. Norwest Bank Minnesota, N.A.*, 107 F.3d 1297, 1306 (8th Cir.1997). Second, in Minnesota, state statutes have been enacted to regulate the business of insurance. Minnesota's insurance regulatory scheme, (Minn.Stat.Chs. 59A–72C), fulfills the second prong of the *Fabe* test. As the Eighth Circuit stated in *Doe*, Minnesota has

enacted a comprehensive statutory scheme to regulate the business of insurance. 107 F.3d at 1306.

Minnesota's insurance code contains a Deceptive Trade Practice Act ("DTPA"). *See* Minn.Stat. § 72A.17. If plaintiff has a claim, it is covered by Minnesota's comprehensive insurance regulatory scheme set forth in the DTPA. If the defendants' practices in dealing in insurance are wrongful, they are addressed in the DTPA. Further, even if a state's insurance regulation scheme is ineffective—and there is no claim that Minnesota's scheme is ineffective here—the mere fact that the scheme exists is sufficient to trigger the application of the McCarran–Ferguson Act. *Lawyers Title Company of Missouri v. St. Paul Title Insurance Corp.*, 526 F.2d 795, 797 (8th Cir.1975); *Seasongood v. K & K Insurance Agency*, 548 F.2d 729, 734 (8th Cir.1977).

Plaintiff, seeking to support her RICO claim, refers to Banker's, First Lender's, and CAC's corporate citizenship. She claims that Michigan's insurance laws—not Minnesota's—regulate the defendants' conduct. As this matter is before the Court on a Rule 12 motion, definitive determinations of conflicts of laws are premature. But even if the plaintiff is correct, she has won a pyrrhic victory: Michigan, too, regulates the business of insurance. *See Insurance Comm'r v. Arcilio et al.*, 221 Mich.App. 54, 561 N.W.2d 412, 416–17 (1997). Whether Minnesota's or Michigan's regulatory scheme is applied, McCarran–Ferguson requires that state law, not the federal RICO laws, govern this transaction.

Finally, it is well-established that applying RICO would "invalidate, impair, or supersede" the state insurance statute. Although courts are divided as to the application of the McCarran–Ferguson Act when federal law is essentially parallel to state law, the Eighth Circuit has decided that the "intrusion of RICO's substantial damage provisions into a state's insurance regulatory program may so impair the state law as to bar application of RICO," *Doe*, 107 F.3d at 1307; *see also Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 392 (6th Cir.1996). Accordingly, plaintiff's RICO claims are barred by the McCarran–Ferguson Act.

**B.   *Tortious Interference: Count III***

The exact parameters of plaintiff's claim of tortious interference with contract are difficult to discern. She seems to claim the defendants knew or recklessly disregarded the terms of the installment contract tendered to her. The complaint seems to allege that this intentionally and willfully interfered with plaintiff's right to obtain the benefits of the contract with the dealers.

■  To succeed on a claim for wrongful interference with contract, the plaintiff must satisfy five elements. She must show: (1) an existence of a contract; (2) the alleged wrongdoer had knowledge of the existence of the contract; (3) that a procurement of the breach of this contract occurred; (4) that such procurement was not justified or was not privileged; and (5) that the breach resulted in damages. *See Furlev Sales & Assoc., Inc. v. North American Automotive Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn. 1982). Applying this test, plaintiff's tortious interference claims cannot be maintained.

■  First, plaintiff's complaint does not allege, nor could it, that a contract existed at the time she purchased the used car. Accordingly, the alleged tortious interference is based on a contract which was never formed. If plaintiff has any claim, it is based on the fact that the dealer's arrangement with the lenders required insurance as a condition precedent to any contract formation. Her claim, then, cannot allege an interference with a contract in being, but must allege a failure to create a contract she may have wished, unilaterally, to form. Taking this allegation as true, this is not an interference with contract claim—there was no contract with which to interfere. *See R.A., Inc. v. Anheuser–Busch, Inc.*, 556 N.W.2d 567, 570 (Minn.App.1996) (*Review Denied*, Dec.3d, 1996). The pre-existence of a contract is an essential component to a claim of tortious interference with contract. Plaintiff's claim fails on this basis alone.

■  Second, under Minnesota law, tortious interference with contract requires a defendant's intentional procurement of the contract breach. *Id.* 556 N.W.2d at 567. The complaint does not assert that any de-

fendant intentionally breached the contract. Plaintiff does not claim that the defendants induced her to breach any agreement with the dealer, that the dealer has alleged such a breach, or that the defendants induced the dealer's own breach of the installment sales contract. Accordingly, Count III is dismissed for its complete failure to assert a claim upon which relief may be granted.

### C. Breach of Contract: Count IV

■ Plaintiff contends the used car vendor breached a not-fully-described contract with her. She claims this breach was caused by procuring the wrong insurance and by failing to disclose all of the required terms and conditions of the insurance. Plaintiff appears to base this claim on the Federal Trade Commission Regulation ("FTC") Holder in Due Course Notice provided to her. Based on this Notice, plaintiff asserts that CAC, as the designated holder of the sales contract, is liable for the dealer's alleged breach.

The Notice contains the following language:

Any holder of this Consumer Credit Contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof.

16 C.F.R. § 433.2.

The plaintiff has misapplied the Notice. The Notice creates no new rights or defenses. Rather, it simply prevents the use of certain so-called "cutoff devices" which would render a consumer liable for payments to a third-party assignee without regard to any defenses the consumer may have against the seller. Thus, the effect of the notice provision in a consumer contract is simply "that assignment of such contract operates as any ordinary assignment would, in the absence of the UCC's 'Holder in Due Course' Rule or 'Waiver of Defenses Clauses.' " *Vietnam Veterans of America, Inc. v. Guerdon Indus.,* 644 F.Supp. 951, 965 n. 10 (D.Del.1986). The Court declines, as a matter of law, to allow the plaintiff's contorted reading of the Notice, which would allow it to turn a consumer shield into a sword. "The FTC rule does not create rights that a consumer can assert, but rather ensures that available rights are not eliminated. Therefore, the question becomes whether the substantive statutes themselves impose a liability on assignees of consumer credit contracts." 644 F.Supp. 951, 965 n. 10.

■ CAC, as the assignee of the contract, does not inherit all liability that may attach to the dealer, and the Court does not find it at all clear that there is any dealer liability here. A claim is only good against an assignee to the extent it diminishes or extinguishes an assignee's claim. It cannot be used to impose liability on the assignee, unless the assignee has assumed the assignor's duty of performance. *See Meyers v. Postal Finance Co.,* 287 N.W.2d 614, 617 (Minn.1979).

■ Under Minnesota law, a contract assignment imposes no duties or liabilities on the assignee in the absence of the assignee's specific assumptions of such liabilities. *Id.* (citing *Pioneer Loan Land Co. v. Cowden,* 128 Minn. 307, 150 N.W. 903 (1915)). Count IV does not assert that CAC assumed any obligation to procure any form of insurance for the plaintiff. Thus, even if the dealer were liable to the plaintiff, CAC's liability does not extend so far as to include an obligation to procure insurance for the plaintiff.

Count IV fails to state a claim on which relief may be granted.

### D. MVRISA Claims: Counts V and VII

■ Plaintiff alleges that CAC is liable for the dealer's alleged violations of the Minnesota Motor Vehicle Retail Installment Sales Act, Minn.Stat. § 168.66 *et seq.* MVRISA, however, does not provide a cause of action against CAC for two reasons: first, the notice posted in the contract between plaintiff and L.B. Sales creates no liability on the part of CAC; and second, MVRISA contains no assignee liability provision.

As previously discussed, the FTC notice in plaintiff's contract does not create new rights or defenses. It, therefore, cannot be bootstrapped into a basis for MVRISA liability. Accordingly, to the extent that plaintiff's allegations of liability rely on vicarious liability arising from the FTC notice, they must be dismissed.

Secondly, CAC, as an assignee, does not inherit all liability that may attach to the

 

dealer. A claim is only good against an assignee to the extent it diminishes or extinguishes an assignee's claim, and cannot be used to impose liability unless the assignee assumed such duty. Here, plaintiff alleges that CAC is liable for the dealer's alleged violations of the MVRISA. But CAC has never assumed such liability as the assignee, nor does MVRISA provide such a cause of action.

MVRISA specifically states that it only applies to the person "committing the violation." Minn.Stat. §§ 168.75(b) and (c). Thus, it is not intended to reach the assignee, but rather the party actually committing the violation. The plaintiff, then, can only have a claim against the dealer—who is not a party to this case. The assignee of a dealer's retail installment contract is not a retail seller, and thus, is "beyond the reach of the statute." *Kinzel v. Southview Chevrolet Co. et al.,* 892 F.Supp. 1211, 1217 (D.Minn.1995).

### E. *Breach of Fiduciary Duty against CAC: Count VII*

Finally, plaintiff alleges the existence of a fiduciary relationship between herself and the dealer under Minnesota law. Plaintiff bases this entirely unsupported allegation on the premise that a retail seller of an automobile assumes fiduciary rather than contractual duties by entering into a sales transaction. The complaint, however, makes no showing that this was anything more than a commercial transaction. The dealer offered plaintiff insurance at a particular rate. There is no claim that it was the best possible rate, or that she should rely on the dealer to get a good deal. Plaintiff simply accepted the price offered by the dealer. It is a well-accepted notion that, absent some additional relationship, a seller is not subject to any form of duty to the general customer. In a commercial relationship between parties to a contract, the aggrieved party is limited to suit in contract or fraud. *Safeco Ins. Co. v. Dain Bosworth, Inc.,* 531 N.W.2d 867, 872–73 (Minn.App.1995). Accordingly, Count VII of plaintiff's complaint is dismissed.

Based on the files, records, and proceedings herein, IT IS ORDERED that:

Defendants' motions to dismiss the complaint are granted.