**CMS GENERATION CO.,** Plaintiff,

v.

**SPECTRUM TECHNOLOGIES U.S.A., INC.,** Defendant/Third–Party Plaintiff,

v.

**Spectrum Power Generation, Ltd.,** Third–Party Defendant.

No. 98–CV–73233.

United States District Court, E.D. Michigan, Southern Division.

Aug. 3, 1999.

916

Joseph K. Erhardt, Detroit, MI, Michael J. Sheridan, Dearborn, MI, for Plaintiff.

Robert S. Krause, Bruce L. Sendek, Detroit, MI, for Defendant.

## ORDER

JULIAN ABELE COOK, Jr., District Judge.

The Plaintiff, CMS Generation Company (CMS),[1] invoking the diversity jurisdiction of this Court, initiated this litigation against the Defendant/Third–Party Plaintiff, Spectrum Technologies U.S.A., Inc. (Spectrum Technologies), in an effort to obtain reimbursement for those expenses that it had incurred in establishing a power generation plant in India. Thereafter,

---

1. CMS Generation Company is a commercial corporation which maintains its principal office in Dearborn, Michigan.

Spectrum Technologies filed a Third–Party Complaint, seeking to obtain indemnity from the Third–Party Defendant, Spectrum Power Generation, Ltd. (Spectrum Generation), a non-resident alien corporation. On May 4, 1999, Spectrum Generation filed this motion to dismiss for lack of personal jurisdiction, pursuant to Fed. R.Civ.P. 12(b)(2). For the reasons that have been set forth below, the motion is granted.

## I.

In March 1992, the government of Andhra Pradesh issued a Letter of Intent to Spectrum Technologies to set up a power plant in India. During a meeting on June 19, 1992, Spectrum Technologies, the National Thermal Power Corporation Limited (National Power),[2] and officials of India's Power Ministry, collectively decided to establish a power project which would be operated as a joint venture.

On October 26, 1992, Spectrum Technologies and National Power, along with CMS, Bambino Agro Industries, Limited, formerly known as Jaya Food Industries, Limited (JFI/BAIL), established the joint venture company, which would be maintained under the name of Spectrum Generation. On June 29, 1993, Spectrum Technologies, National Power, and JFI/BAIL signed a Promoter's Agreement which set forth the terms and conditions of their collaboration on the power project. Although CMS was expected to be a participant in the Promoter's Agreement, it did not sign the document due to reasons that were unexplained in the briefs.[3]

Thereafter, CMS undertook measures which were designed to develop the power project, as exemplified by its numerous pieces of correspondence to other corporations and its receipt of a $163 million Engineering, Procurement and Construction proposal from the Rolls–Royce Power Generation System in March 1993. However, the relationship between CMS and Spectrum Generation soured and ultimately dissolved in June 1994. Thereafter, the parties initiated negotiations between their respective offices in the United States (Dearborn) and India, all of which were aimed at resolving CMS' claims for the reimbursement of project related expenses.

On June 18, 1997, the parties reached an accord, in which Spectrum Generation agreed to pay the sum of $700,000 to CMS as a full and complete settlement of all claims relating to project related expenses. Unfortunately, CMS never received the agreed upon payment because the Reserve Bank of India refused to allow the settlement monies to be disbursed, asserting that (1) the claimed expenses had been incurred by, and were for the benefit of, the promoters, and (2) no privity of contract existed between Spectrum Generation and CMS. Thereafter, Spectrum Generation made numerous attempts, all of which were unsuccessful, to obtain a release from the Reserve Bank of India for the $700,000 payment. This law suit followed.

## II.

When presented with a motion seeking the dismissal of an action under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction a proceeding under the diversity jurisdiction of a federal district court must apply the law of the state in which it sits to determine whether personal jurisdiction over a non-resident defendant may be exercised. *Theunissen v. Matthews,* 935 F.2d 1454, 1459 (6th Cir.1991); *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir.1980).

Unless authorized by federal statute or another rule of civil procedure, a district

---

**2.** National Power appears to be a publicly owned power generator in India.

**3.** During the preceding fall months, CMS had signed a draft Promoter's Agreement, apparently at the urging of Spectrum Technologies, which had assured it that the other actors would also sign it upon its arrival in India. (Resp. Br. Mot. Dismiss, Ex. 1 at ¶ 11, Ex. 4 at 1.) For reasons that have not been made clear to this Court, none of the other actors signed the draft Promoter's Agreement.

court ... can exercise personal jurisdiction over a party who is not an inhabitant of or found within the state in which the federal court sits only if the party is subject to the jurisdiction of the courts of the state in which the district court sits.

*Davis v. A & J Elecs.,* 792 F.2d 74, 75–76 (7th Cir.1986) (discussing limitations under Fed.R.Civ.P. 4(e), which addresses service of process). "However, constitutional concerns of due process limit the application of this state law." *Theunissen,* 935 F.2d at 1459. Each case must be decided on its own facts. *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir.1988).

 In the face of a properly supported motion under Rule 12(b)(2), a non-movant may not stand on its pleadings but must, by affidavit or otherwise, set forth specific facts which show that the court has jurisdiction. *Theunissen,* 935 F.2d at 1458. This standard must be applied because the non-movant bears the burden of proving that the court has personal jurisdiction over the moving party. *Id.* In deciding the motion, the Court may rule " 'on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.' " *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989) (quoting *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2nd Cir.1981)). The court has discretion to chose the method to be applied, and thus will be reversed only for an abuse of discretion. *Theunissen,* 935 F.2d at 1458. However, the Sixth Circuit Court of Appeals (Sixth Circuit) has determined that the method which is selected by the trial court will affect the non-movant's burden of proof. *Id.* If the trial court decides to rely upon the written submissions, it must

judge the pleadings in a light that is most favorable to the non-movant. *Serras,* 875 F.2d at 1214. Further, the non-movant need only make a *prima facie* showing of the existence of personal jurisdiction. *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir.1998); *Theunissen,* 935 F.2d at 1458; *Serras v,* 875 F.2d at 1214. The court is not to weigh the controverting assertions of the party who seeks the dismissal. *Theunissen,* 935 F.2d at 1459; *Serras,* 875 F.2d at 1214. In this way, non-resident movants are precluded from regularly avoiding personal jurisdiction claims by filing an affidavit, in which the affiant simply denies all jurisdictional facts.[4] *Id.*

### III.

Because the law of the state in which a federal court sits controls whether personal jurisdiction exists, the present Rule 12(b)(2) motion must be evaluated pursuant to Michigan law. Michigan has a long-arm statute, which establishes limited personal jurisdiction over corporations, and provides in part:

[t]he existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

---

4. Those parties who dispute a non-movant's factual assertions have recourse to seek relief from the court on the basis of its discretionary authority to conduct an evidentiary hearing or authorize them to initiate relevant discovery. *Theunissen,* 935 F.2d at 1459; *Serras,* 875 F.2d at 1214. At that stage, the burden on the party who asserts the jurisdictional issue

increases to a preponderance of the evidence. *Serras,* 875 F.2d at 1214.

Even if a court issues a pretrial order which denies a Rule 12(b)(2) motion, the moving party may proceed to trial without waiving the defense, thus requiring the non-movant to produce the requisite amount of proof at trial on this issue. *Serras,* 875 F.2d at 1214–15.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

. . . . .

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant. ·

Mich. Comp. Laws § 600.715. This statute has been broadly construed by the courts in Michigan. For example, in the context of analyzing these personal jurisdiction statutes, the Michigan Supreme Court has stated that, "[t]he word 'any' means just what it says. It includes 'each' and 'every.' It comprehends 'the slightest.' " *Sifers v. Horen,* 385 Mich. 195, 199 n. 2, 188 N.W.2d 623 (1971) (citation omitted). Therefore, under Michigan law, the phrase "transaction of any business" is interpreted broadly to include the slightest business transaction. *See id.*

■ Consequently, Michigan's long-arm statute has been construed by the Sixth Circuit to extend the scope of personal jurisdiction to that permitted by the due process clause of the Fourteenth Amendment. *LAK, Inc. v. Deer Creek Enters.,* 885 F.2d 1293, 1298 (6th Cir.1989); *see Sifers,* 385 Mich. at 198–200, 188 N.W.2d 623; *see also Davis H. Elliot Co. v. Caribbean Utils. Co.,* 513 F.2d 1176, 1179 (6th Cir. 1975) (inquiry under this statute and due process merge into single analysis); *Commissioner of Ins. v. Arcilio,* 221 Mich.App. 54, 73, 561 N.W.2d 412 (1997). Thus, courts must examine whether a defendant has had the requisite minimum contacts with Michigan to allow an exercise of personal jurisdiction which satisfies due process considerations. *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (constitutional touchstone is whether defendant purposefully established minimum contacts in forum state); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (minimum contacts requirement (1) protects defendants from litigating in distant or inconvenient forum, and (2) prevents states from reaching beyond limits imposed on them in federal system); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (due process demands that non-resident defendant have such minimum contacts with forum state so that exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice").

The Sixth Circuit has developed a three-part analysis to be applied in making this determination:

"First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."

*LAK,* 885 F.2d at 1299 (quoting *Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968)); *Arcilio,* 221 Mich.App. at 73–74, 561 N.W.2d 412. A review of these factors suggests that the issues in controversy which have been brought into focus by the instant motion presents a close question. However, in light of the peculiar facts that are relevant to this case (i.e., Spectrum Generation is an Indian corporation and the locus of the business transaction between these parties was in India), the weight of precedent indicates that personal jurisdiction cannot be asserted over this dispute.

**A.**

■ An evaluation of the record in this cause strongly suggests that a prima facie showing has not been made that Spectrum Generation purposefully availed itself of Michigan's benefits or protections. This factor, when employed, protects the movant from being "haled into [a] jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King,* 471

U.S. at 475, 105 S.Ct. 2174 (internal quotations and citations omitted). It also provides a protective shield for Spectrum Generation from being subjected to the personal jurisdiction of a judicial tribunal in a distant forum through the unilateral acts of another party. The Supreme Court has determined that unilateral activity by a plaintiff with a nonresident defendant does not satisfy the minimum contacts requirement. Rather, a defendant must do something that purposefully avails itself of the privilege of conducting an activity within the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Consequently, although Spectrum Technologies points to a plethora of written communications from CMS, this evidence is not necessarily sufficient to justify a finding of personal jurisdiction over Spectrum Generation.[5] It does nothing more than substantiate a conclusion that CMS was integrally involved in the power plant project. This is especially so given that the involvement of CMS in the power project antedates the incorporation of Spectrum Generation..

Even if a contractual relationship did exist between Spectrum Generation and CMS, personal jurisdiction may not be predicated solely on this determination. *Burger King,* 471 U.S. at 478, 105 S.Ct. 2174. In 1988, the Sixth Circuit recognized that:

> the Supreme Court has stopped short of allowing jurisdiction *whenever* an out-of-state defendant contracts with a forum resident. *Rather, prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing need to be addressed to evaluate, in a "highly realistic" way, the intended future consequences that are "the real object of the business transaction."*

*Lanier v. American Bd. of Endodontics,* 843 F.2d 901, 910 (6th Cir.1988) (italics emphasis added and citation omitted); *Burger King,* 471 U.S. at 478–79, 105 S.Ct. 2174. This "highly realistic" evaluation leads to the conclusion that a prima facie case has not been made that Spectrum Generation had sufficient minimum contacts with Michigan so as to justify the exercise of personal jurisdiction, even when accepting as true all of Spectrum Technologies' properly supported factual allegations.

In support of its opposition to the requested relief, Spectrum Technologies produced the affidavit of A.V. Mohan Rao, who identified himself as the Company's President and CEO and as a director of Spectrum Generation. In his affidavit, Rao avers that he traveled to Dearborn, Michigan on several unspecified dates to discuss and negotiate (1) the Power Sales Agreement, (2) various vendor contracts, (3) the Fuel Supply Agreement, (4) the Engineering, Procurement and Construction Contracts, and (5) the Operating and Maintenance Agreement, with CMS. He insists that his trip to Dearborn was in his capacity as a "co-promoter" of Spectrum Generation.[6] Moreover, Rao claims that he solicited CMS to contribute to the capital and development of the power project subsequent to the issuance of the Letter of Intent to Spectrum Technologies in March 1992.[7]

Viewing this evidence in a light that is most favorable to Spectrum Technologies allows this Court to infer that (1) Rao acted in his capacity as a Spectrum Generation representative, and (2) Spectrum Generation purposefully reached out to Michigan to conduct a business activity, which satisfies the § 600.715(1) require-

---

5. Spectrum Technologies has provided eighteen letters (1) from CMS to Spectrum Generation, or (2) which represent that CMS is an integral part of the power project.

6. Resp. Br. Mot. Dismiss, Ex. 1 at ¶ 19.

7. Rao does not specify whether he engaged in this solicitation in his capacity as the head of Spectrum Technologies, or as a director or co-promoter of Spectrum Generation.

ment of transacting "any" business within the state.

However, the satisfaction of statutory prerequisites will not to allow the exercise of personal jurisdiction over a party unless the standards of adequate minimum contacts are sufficient to satisfy the constitutional due process concerns. *See Theunissen,* 935 F.2d at 1459. These due process concerns inhibit this Court from exercising personal jurisdiction over Spectrum Generation. Other than the evidence relating to Mohan Rao's visit to Michigan, Spectrum Technologies has provided this Court with only two classes of relevant evidence to support its assertion of personal jurisdiction over Spectrum Generation: namely, (1) written communications from Spectrum Generation to CMS, and (2) settlement negotiations between Spectrum Generation and CMS.[8]

With regard to the first class of relevant evidence (to wit, written communications) Spectrum Technologies has produced a letter, dated February 15, 1993, from Kishan Rao who, as a "Director" of Spectrum Generation, wrote to the Gas Authority in India about a draft copy of a gas provision contract.[9] His letter indicates that a carbon copy was sent to CMS in Michigan. A second is a facsimile message on a Spectrum Generation letterhead, dated June 20, 1993, that is addressed to CMS's Senior Vice President in Dearborn, in which Mohan Rao raises several contractual issues with regard to a proposed Shareholders Agreement.[10]

Addressing the second class of relevant evidence (i.e., settlement negotiations), the exhibits relating to this subject indicate that the discussions between Spectrum Generation and CMS resulted in a $700,-000 settlement. These negotiations included five written communications from Spectrum Generation, three of which were addressed to CMS in Michigan,[11] while the remaining two are addressed to CMS in India.[12] Also provided is the Settlement Agreement between Spectrum Generation and CMS in India.

If this was a typical dispute over jurisdiction between domestic parties, these activities might well have been sufficient to support Spectrum Technologies' contention that Spectrum Generation had engaged in efforts that were purposefully directed toward Michigan. For example, the written communications to CMS in Michigan could establish that Spectrum Generation had purposefully availed itself of conducting business in Michigan:

> [I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King,* 471 U.S. at 476, 105 S.Ct. 2174. This factor would buttress the evidence relating to the settlement negotiations, which may well have constituted sufficient minimum contacts for this forum to assert personal jurisdiction over Spectrum Generation. *See American Greetings,* 839 F.2d at 1165–70.

---

**8.** Spectrum Generation, through the submitted affidavit of its Director, M. Raghuveer, contests Spectrum Technologies' version of the facts. Since, as discussed below, Spectrum Generation's motion should be granted even when accepting the truthfulness of Spectrum Technologies' factual assertions, there is no need to address this affidavit.

**9.** Resp. Br. Mot. Dismiss, Ex. 24.

**10.** Resp. Br. Mot. Dismiss, Ex. 23.

**11.** Resp. Br. Mot. Dismiss, Exs. 25–26.

**12.** Resp. Br. Mot. Dismiss, Exs. 27, 30. Exhibit 27 is addressed to "CMS Energy (India)," while Exhibit 30 is addressed to CMS's counsel in India.

But this case is atypical, in that it concerns a non-resident alien defendant, Spectrum Generation, and a business transaction that is to be effectuated in a foreign land. Under such circumstances, the case law is markedly more conservative in assessing whether the due process requirements have been met, out of recognition that the concern of protecting defendants from litigating in distant or inconvenient forums takes on greater weight. A case that is remarkably on point is *International Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386 (6th Cir.1997).[13] As in the case at bar, a Michigan corporation sought to have a federal district court sitting in that state assert limited personal jurisdiction over foreign corporations in order to litigate contract claims which arose from a joint business project that was to be centered in a foreign territory, where the relevant contracts were entered. *Euroglas*, 107 F.3d at 387–91. The party who had asserted personal jurisdiction pointed to numerous communications that had been received from the foreign parties to the forum state. *Id.* at 391, 393. However, this factor was given little weight by the Sixth Circuit in light of the contracts between the litigants, which contained choice of law clauses in favor of a foreign jurisdiction. *See id.* at 393, 396.

> Glas Trosch expressly invoked the benefits and protection of Swiss law in negotiating and signing, on Swiss soil, the contract under which the validity of International Technologies' claims will ultimately have to be determined. By its terms, the contract is to be interpreted under Swiss law. There was no purposeful availment of the benefits and protections of Michigan law here, and the defendants' "contacts" with Michigan are too "fortuitous" and "attenuated" to suggest otherwise.

*Id.* at 396.

*Euroglas* is a persuasive authority given the facts in the case at bar, where (1) Spectrum Technologies' indemnification claim against Spectrum Generation arises out of a clause in the Promoter's Agreement, which is to be interpreted under the law of India, and Indian courts are to have exclusive jurisdiction over disputes arising out of it,[14] and (2) the negotiations between Spectrum Generation and CMS resulted in the execution of a formal Settlement Agreement, in India, whereby the parties expressly agreed that its terms were to "be governed and interpreted in accordance with the laws of India."[15] *See also Burger King*, 471 U.S. at 481–82, 105 S.Ct. 2174 (giving weight to choice of law provision in personal jurisdiction dispute). Spectrum Technologies attempts to avoid this reasoning by contending that its third-party claim against Spectrum Generation is not contractual, but arises out of an (1) express or implied assumption of responsibility on Spectrum Generation's part for the expenses and costs incurred by CMS, or (2) unjust enrichment theory.[16] As for the former, the Court fails to discern any basis upon which such an obligation by Spectrum Generation could exist other than an express or implied contract. The latter argument is also unpersuasive to the extent that an unjust enrichment is a quasi-contractual doctrine. *See Black v. Boyd*, 248 F.2d 156, 162 (6th Cir.1957).

More fundamentally, Spectrum Technologies conspicuously omits any reference to a portion of its Third–Party Complaint (emphasis added), in which it alleges:

> 4. [Spectrum Technologies] and [Spectrum Generation] entered into a Promoters Agreement regarding the develop-

---

**13.** *See also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

**14.** (Reply Br. Mot. Dismiss, Ex. A ¶¶ 4.1(p), 13.1, 13.2, 15.1.) During the oral argument, the parties explained that the Spectrum Gen-

eration Board of Directors had ratified the Promoter's Agreement. (*See id.* ¶ 9.1.)

**15.** Resp. Br. Mot. Dismiss, Ex. 31 ¶ 8(b).

**16.** Surresponse Br. Mot. Dismiss, at 8–9; Third–Party Compl. ¶¶ 7–8.

ment of the plant in question. Having relied upon the terms, conditions, and representations made in this Promoters Agreement, [Spectrum Technologies] invested significant monies in [Spectrum Generation], and further, solicited various companies to contribute to the capital of [Spectrum Generation].

5. *Pursuant to the express terms of the Promoters Agreement, more specifically Section 4.1(p), [Spectrum Generation] was to indemnify, save and hold harmless [Spectrum Technologies] "against all liabilities, claim, obligation, loss, expense or damage caused to or assessed against . . . [Spectrum Technologies]" relating to the power plan . . . .*

These allegations demonstrate quite clearly that, contrary to Spectrum Technologies' present argument, its indemnity claim against Spectrum Generation is essentially contractual in nature. Thus, *Euroglas* is on point.

The Court also finds it instructive that the *Euroglas* court noted that money had been transferred from the foreign corporations to the Michigan corporation in response to invoices from Michigan. *Euroglas,* 107 F.3d at 391. The absence of any such factor in the instant case argues even more strongly against exercising limited personal jurisdiction. Finally, *Euroglas* declined to assert limited personal jurisdiction over the foreign entities despite an acknowledgment that one of their authorized representatives "occasionally" visited Michigan, *id.,* a factor which minimizes the importance of the allegation that Mahon Rao visited CMS in order to pursue discussions and negotiations regarding the Indian power project.

Thus, Spectrum Technologies has failed to make a prima facie showing that Spectrum Generation purposefully availed itself of Michigan's benefits and protections because any contacts Spectrum Generation had with Michigan were too attenuated to support an assertion of limited personal jurisdiction over it. *See id.* at 396.

B.

■ The next factor to consider under this Circuit's test is whether the cause of action arises from Spectrum Generation's activities in Michigan, an inquiry that the Court also answers in the negative. This factor requires only that the cause of action have a substantial connection with Spectrum Generation's in-state activities. *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1091 (6th Cir. 1989). " 'Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact].' " *WEDGE Group,* 882 F.2d at 1091 & n. 2 (quoting *Southern Machine,* 401 F.2d at 384 n. 29).

This element is not met here because Spectrum Technologies' Third–Party Complaint against Spectrum Generation stems from (1) the Promoter's Agreement, a contract that was negotiated and executed in India and governed by the law of that nation, or (2) the development of the Indian power project, which centers on those events that transpired in India.[17] This Circuit has held that a cause of action "arises out of" a defendant's actions if it was "made possible by" or "lies in the wake of" the defendant's contact with the forum. *Lanier,* 843 F.2d at 909. Since, Spectrum Generation cannot be considered to have had sufficient contacts with Michigan to justify an assertion of personal jurisdiction over it under the *Euroglas* standard, Spectrum Technologies' third-party action against it cannot be said to meet the *Lanier* standard.

C.

■ Finally, the Court concludes that Spectrum Generation's acts, or the consequences that it caused, do not have a substantial enough connection with Michigan to make the exercise of limited personal jurisdiction over it reasonable. In evaluating the reasonableness of the burden on Spectrum Generation in defending a Michi-

---

**17.** Third–Party Compl. ¶¶ 5–9; Reply Br. Mot. Dismiss, Ex. A ¶ 15.1.

gan suit, the Court must consider such relevant factors as (1) Michigan's interest in adjudicating the dispute, (2) Spectrum Technologies' interest in obtaining convenient and effective relief, (3) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (4) the shared interest of the states in furthering fundamental substantive social policies. *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 559. *Euroglas* teaches that the reasonableness factor cannot be met here, where Spectrum Generation is an alien corporation that is devoted to developing a power project in India and its only relationship with Michigan pertains to its tangential contacts with CMS in furtherance of this mission. *See Euroglas*, 107 F.3d at 396. When a non-resident alien defendant is involved, as is the case with Spectrum Generation, the reasonableness inquiry must give significant weight to the "unique burdens placed upon one who must defend oneself in a foreign legal system." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

■ Although Michigan has an interest in adjudicating the dispute, it is less than that of India inasmuch as the power project out of which Spectrum Technologies' Third–Party Complaint rises is located there. Spectrum Technologies' interest in a convenient and effective relief is not implicated by declining personal jurisdiction. The parties have indicated a preference for an Indian forum through the Promoter's Agreement and Settlement Agreement, both of which contain a choice of law clause in favor of India. Moreover, Spectrum Generation's brief indicates that it is already engaged in a litigation with Spectrum Technologies in India. This factor, in addition to Spectrum Technologies' willingness to enter into the power project, indicates that it will not be unduly inconvenienced by raising its claims against Spectrum Generation in the Indian judicial forum. The interest of the interstate judicial system in obtaining the most efficient resolution of controversies also counsels in favor of declining

personal jurisdiction since (1) India will be better placed to interpret the essentially contractual relationships that have been created under Indian law, and (2) the Promoter's Agreement and Settlement Agreement contain alternative dispute resolution clauses.

> The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant ... as well as the Federal interest in Government's foreign relations policies, will be best served by ... an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State.

*Asahi*, 480 U.S. at 115, 107 S.Ct. 1026. Finally, the shared interest of the states in furthering fundamental substantive social policies do not appear to be implicated through the legal claims at issue in this litigation.

With recognition of the admonition by the Supreme Court that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," *Asahi*, 480 U.S. at 115, 107 S.Ct. 1026 (quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 404, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting)), the Court concludes that it does not have limited personal jurisdiction over Spectrum Generation.

### IV.

■ Spectrum Technologies argues that general personal jurisdiction over Spectrum Generation exists. The Court disagrees. Michigan has a general personal jurisdiction statute which applies if the corporation (1) is incorporated under Michigan law, (2) has consented to suit, or (3) systematically conducts business within the state. Mich. Comp. Laws § 600.711.

There is no dispute that Spectrum Generation is not incorporated under Michigan law. Moreover, there is no allegation that it has consented to be sued in Michigan. Thus, the only available basis for asserting

general personal jurisdiction is if Spectrum Generation systematically conducts business within the state. In its motion, Spectrum Technologies argues that this factor is satisfied by Spectrum Generation's (1) seven year period of continuous business contacts with CMS, and (2) negotiations with CMS to reach a settlement, which spanned over one year and included various mailings to Michigan. This argument must be rejected.

Spectrum Generation is an Indian corporation based in India which was created for the purpose of developing a power project there. Its involvement with Michigan stems only from a tangential relationship with one Michigan business enterprise which was in furtherance of the Indian project. This is not the sort of persistent, systemic effort to engage in business within Michigan that has generally supported a finding of personal jurisdiction under this prong. *See, e.g., Michigan Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462 (6th Cir.1989) (independent sales representative in state, regularly solicited mail orders, over 400 sales totaling over $625,000 in 1986 and 1987, and at least one sale per month during those years); *Kircos v. Goodyear Tire & Rubber Co.*, 70 Mich.App. 612, 247 N.W.2d 316 (1976) (solicitation of Michigan sales by direct mail, advertising media, personal contact, and automobile races, as well as dealer in Michigan and more than one percent of total revenue from Michigan customers); *see also Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793–93 (6th Cir.1996) (on analogous facts to the case at bar, no general personal jurisdiction over non-resident alien corporate defendant pursuant to similar Ohio long-arm statute). Further, Spectrum Generation's apparent abandonment of all ties with Michigan once its business dealings with CMS soured also indicates that its contacts with this state were not a systemic part of its business. Finally, the closeness of the question (i.e., whether limited personal jurisdiction may be asserted over Spectrum Generation) also mitigates against a finding that it meets the more demanding standard of maintaining continuous and systemic business within the state.

### V.

Accordingly, for the reasons that have been explained above, Spectrum Generation's motion to dismiss for lack of personal jurisdiction is granted.

IT IS SO ORDERED.