**MATRIX ESSENTIALS, INC. Plaintiff**

v.

**HARMON STORES, INC. fka Harmon Drug, Inc. Defendant**

**No. 1:00 CV 3066.**

United States District Court,
N.D. Ohio,
Eastern Division.

Dec. 7, 2001.

Gina A. Beredo, Louis A. Colombo, Michael K. Farrell, Cleveland, OH, for Plaintiff.

David L. Drechsler, Philip R. Wiese, Buckingham, Doolittle & Burroughs, Akron, OH, for Defendant.

*MEMORANDUM OF OPINION AND ORDER ADOPTING THE REPORT AND RECOMMENDATION AND GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION*

WELLS, District Judge.

On 8 November 2000, plaintiff Matrix Essentials, Inc. ("Matrix") filed a two-

count complaint in the Ohio Court of Common Pleas for Cuyahoga County against defendant Harmon Stores, Inc. ("Harmon"), alleging breach of contract and unjust enrichment. On 11 December 2000, Harmon removed the case from Common Pleas Court to this Court and filed a motion to dismiss for lack of personal jurisdiction. (Docket Nos. 1, 5). Matrix filed a response to Harmon's motion to dismiss on 16 March 2001. (Docket No. 12). Harmon replied on 23 March 2001. (Docket No. 13). This Court referred the matter to United States Magistrate Judge Nancy A. Vecchiarelli on 9 April 2001 for a report and recommendation ("R & R") on the pending motion. (Docket No. 14). Magistrate Judge Vecchiarelli filed her R & R on 24 April 2001, recommending that the case be dismissed for lack of personal jurisdiction. (Docket No. 15). Matrix filed objections to the R & R on 9 May 2001 (Docket No. 18), and Harmon filed a response to the objections on 22 May 2001 (Docket No. 19).

For the reasons stated below, the Court adopts the Magistrate Judge's R & R and dismisses the case for lack of personal jurisdiction.

## I. Factual Background

Magistrate Judge Vecchiarelli comprehensively describes the factual background of this case as follows:

> This action arises out of settlement between Matrix Essentials, Inc. ("Matrix") and Defendant Harmon Stores, Inc., fka Harmon Drug, Inc., ("Harmon Stores") achieved in a 1992 lawsuit in New Jersey.

> Matrix is an [sic] corporation organized and existing under the laws of Ohio with its principal place of business in Ohio. Matrix is the manufacturer of MATRIX brand salon hair care products which it distributes and sells through a network of authorized distributors.

> Harmon Stores is a corporation organized and existing under the laws of Delaware and its principal place of business [is] in New Jersey. Harmon Stores is a discount distribution center and has distributed MATRIX products. Harmon Stores is not a licensed beauty salon. Harmon Stores operates approximately 25 stores in New York, New Jersey, and Connecticut. Harmon Stores claims that it has never had residence, owned, operated, or was otherwise domiciled in Ohio. Further, Harmon Stores maintains no Harmon Stores' officers, agents, or employees have traveled to Ohio for the benefit of or on official business for Harmon Stores.

> In 1992, Matrix instituted a federal lawsuit, *Matrix Essentials, Inc. v. Gerstein*, alleging trademark infringement, unfair competition, and other related claims against several defendants, including Nash Stores dba Harmon Stores, in the United States District Court of the District of New Jersey. During that federal action, Matrix and Harmon Stores agreed to settle the claims between them and entered into a written settlement agreement.

> The settlement occurred as a result of negotiations between Matrix and its Ohio counsel [1] and Harmon Stores and its New Jersey counsel. Neither Harmon Stores' representatives or counsel physically visited Ohio for the purpose of negotiating the settlement agreement. Apparently, these negotiations were conducted via telephone and letter. Although Matrix characterizes communica-

---

1. Matrix's counsel had been admitted *pro hac vice* to the District of New Jersey for the underlying lawsuit.

tion between the parties as "extensive," it does not provide any evidence of telephone conversations nor does it attempt to provide this Court with any estimate of the number of calls. Matrix does provide this Court with eight letters concerning the settlement, five of which were directed by Harmon Stores or its counsel in New Jersey to either Matrix or its counsel in Ohio.

The letters primarily confirm settlement discussions. A letter dated September 26, 1989, from the Administrator of Security Services at Matrix confirms a conversation in which Harmon Stores represented it would no longer sell Matrix products. A February 22, 1993 letter from Harmon Stores' counsel to Matrix's counsel states that he is awaiting final preparation of the settlement agreement. A March 5, 1993 letter from Matrix's counsel to Harmon Stores' counsel states that [a] check for $55.80 made payable to the IRS is enclosed. Letters dated March 15 and 16, 1993, document a request by Harmon Stores' counsel for $63.46 for copying expenses for unknown IRS documents and·Matrix's counsel's payment to Harmon Stores' counsel. A May 12, 1993 letter from Harmon Stores' Vice President to Matrix's counsel states that he, pursuant to Matrix's request, is sending samples of each Matrix product held in Harmon Stores' inventory. A June 21, 1993 letter from Harmon Stores' counsel states that he had "been advised by my client that the merchandise was shipped via Yellow Freight," but does not state the kind or quantity of merchandise or the destination of the merchandise. Finally, a July 16, 1993 letter from Harmon Stores' counsel states that he will be disbursing the funds previously forwarded to him but does not discuss either the sum or to whom or where the funds will be disbursed.

The settlement agreement was executed by Matrix (via Robert Miller) on May 24, 1993 and by Harmon Stores (via Robert Germano) on June 15, 1993. Under the agreement, Matrix agreed to dismiss the claims against Harmon Stores in the federal action, as well as all other claims regarding Harmon Stores' involvement in the sale and/or offering for sale of MATRIX products. In return, Harmon Stores agreed that (1) it would provide testimony regarding the federal claims and (2) it would not distribute, display, sell, offer for sale, and/or advertise MATRIX products until such time that Matrix would change its salon only policy regarding the sale of MATRIX products. The settlement agreement states that it is "governed by and shall be construed in accordance with the laws of the State of Ohio."

On September 22, 2000, Matrix initiated a lawsuit in the Court of Common Pleas, Cuyahoga County, Ohio. In this suit, Matrix maintains that Harmon Stores breached the settlement agreement by resuming its practice of distributing, displaying, selling, and advertising MATRIX products. On December 11, 2000, Harmon Stores removed this case to this court, the Northern District of Ohio, pursuant to 28 U.S.C. §§ 1441 and 1446.

(R & R at 2–4).

## II. Standards

Under Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C), the Court reviews *de novo* the portion of the Magistrate Judge's report and recommendation to which specific objection was made. In its objections to the R & R, Matrix argues that the Magistrate Judge erred in finding that Harmon is not subject to the specific jurisdiction of this Court. Specifically, Matrix argues that the Magistrate Judge erred in finding that Harmon had not availed itself of the

privilege of transacting business in the state of Ohio when it negotiated a settlement agreement with an Ohio corporation. Matrix also contends that the Magistrate Judge erred when she concluded that Harmon could not reasonably foresee litigation in Ohio arising out of the settlement agreement. Finally, Matrix argues that the Magistrate Judge erred in failing to address the second and third prongs of the specific jurisdiction test laid out by the Sixth Circuit in *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968).

■■■■ When a motion to dismiss for lack of personal jurisdiction is made, the plaintiff has the burden of establishing that jurisdiction exists. *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1168 (6th Cir.1988). The burden the plaintiff must meet depends on whether the district court will hold a preliminary evidentiary hearing before deciding the motion. *Id.* If the district court opts to decide the motion to dismiss without an evidentiary hearing, the plaintiff need only set forth a *prima facie* case of jurisdiction. *Id.* at 1169 (quoting *Welsh v. Gibbs,* 631 F.2d 436, 438–9 (6th Cir.1980)). Because Harmon's motion is being decided without an evidentiary hearing, Matrix need only establish a *prima facie* case of jurisdiction to overcome Harmon's motion to dismiss.

"In diversity cases, federal courts apply the law of the forum state to determine whether personal jurisdiction exists." *Nationwide Mutual Insurance Co. v. Tryg International Insurance Co., Ltd.,* 91 F.3d 790, 793 (6th Cir.1996) (citing *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1298 (6th Cir.1989)). If jurisdiction is appropriate under the state's long arm statute, a court must then turn its attention to the question of whether jurisdiction would comport with the requirements of due process.

■■■■ The Sixth Circuit has set forth a three-part test for determining whether exercising jurisdiction would violate due process requirements. For personal jurisdiction to be appropriate: (1) a defendant must purposefully avail itself of the privilege of acting in the forum state; (2) the cause of action must arise from the defendant's activities in the forum state; and (3) the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1299 (6th Cir.1989) (quoting *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir.1968)).

When a state has a long arm statute that extends to the limits of due process, a district court is able to collapse its long arm analysis into its due process analysis. *See e.g., CMS Generation Co. v. Spectrum Technologies U.S.A., Inc.* 69 F.Supp.2d 915, 919 (E.D.Mich.1999) (collapsing Michigan long arm analysis into due process analysis). Thus, although determining personal jurisdiction is nominally a two-step process, it is often treated as a one-part test.

### III. Analysis

**A. Personal Jurisdiction Under the Ohio Long Arm Statute**

**1. Case Law Interpreting Ohio's Long Arm Statute**

The Ohio long arm statute provides in relevant part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state; ... (C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts

enumerated in this section may be asserted against him.

Ohio Rev.Code § 2307.382.

The first court to interpret the limits of Ohio's long arm statute was the Sixth Circuit in *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972). *See Hoover Co. v. Robeson Industries Corp. et al*, 904 F.Supp. 671, 673 (N.D.Ohio 1995) (stating that *In–Flight Devices* was the first case to interpret the limits of Ohio's long arm statute). In *In–Flight Devices*, the Sixth Circuit found it necessary to construe the meaning of the long arm statute since it had not been "construed authoritatively" by Ohio courts. 466 F.2d at 224. Relying on a similarly worded provision of the Illinois long arm statute and Section 1.03 of the Uniform Interstate and International Procedure Act, the Sixth Circuit concluded "that the Ohio legislature intended to extend the jurisdiction of its courts to the Constitutional limits [of due process.]" *Id.* In the absence of a decision by the Ohio Supreme Court, Ohio state courts and federal courts applying Ohio law followed the Sixth Circuit's ruling in *In–Flight Devices*, which comports with the jurisdictional limits of most long arm statutes. *See* Khoi D. Nguyen, *Invisibly Radiated: Federalism Principles and the Proposed Hague Convention on Jurisdiction and Foreign Judgments*, 28 Hastings Const. L.Q. 145, 153 (2000) ("almost twenty states have long-arm statutes that allow the exercise of personal jurisdiction to the maximum extent permitted by the Constitution [and a]nother twenty-five have statutes that have been interpreted ... to reach the limits of the Constitution.").

When the Ohio Supreme Court did interpret the meaning of the Ohio long arm statute, it unambiguously stated that the Ohio long arm statute did *not* extend the jurisdiction of Ohio courts to the limits of due process. *Goldstein v. Christiansen,*

70 Ohio St.3d 232, 238 n. 1, 638 N.E.2d 541 (1994). Instead, the Ohio Supreme Court held that personal jurisdiction under the Ohio long arm statute would be appropriate only when the language of the long arm statute confers jurisdiction *and* exerting jurisdiction would not violate due process. *Id.* at 235, 638 N.E.2d 541.

In spite of this ruling by the Ohio Supreme Court, several post–1994 cases from the Sixth Circuit and U.S. district courts in both the northern and southern districts of Ohio analyze jurisdiction under the Ohio long arm statute as a one-step process, considering only whether jurisdiction comports with due process. *See, e.g., Norcold, Inc. v. Greg Lund Products, Ltd.,* 109 F.Supp.2d 819 (S.D.Ohio 2000); *Nationwide Mutual Insurance Co. v. Tryg International Insurance Co.,* 91 F.3d 790 (6th Cir.1996). For example, the *Norcold* court noted "The Ohio Supreme Court has stated that Ohio Rev.Code Ann. § 2307.382 does not extend personal jurisdiction to the extent permitted under the Due Process Clause ... The Sixth Circuit, however, has concluded that where Ohio is the forum state, personal jurisdiction exists as long as it comports with due process." *Norcold* 109 F.Supp.2d at 823 (citations omitted).

■ The Ohio Supreme Court's interpretation is binding precedent to a federal court sitting in diversity. As the Supreme Court stated: "it is not our function to construe a state statute contrary to the construction given it by the highest court of a State." *O'Brien v. Skinner,* 414 U.S. 524, 531, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974). Thus, "a federal court is bound to respect the interpretation of state law announced by the highest judicial tribunal in a State." *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 481, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) (Stevens, J. dissenting). In light of this precedent, it is

clear that Ohio's long arm statute should be applied in a manner consistent with the Ohio Supreme Court's ruling in *Goldstein.*

In the R & R, Magistrate Judge Vecchiarelli analyzed jurisdiction under the Ohio long arm statute as a one-step process, considering only whether exercising personal jurisdiction over Harmon would fall within the bounds of due process. Neither party objected to the Magistrate Judge analyzing personal jurisdiction only in terms of due process. However, to comport with the Ohio Supreme Court's decision in *Goldstein,* this Court will conduct the necessary analysis of whether personal jurisdiction over Harmon is appropriate under Ohio's long arm statute prior to considering Matrix's objections to the Magistrate Judge's due process analysis.

## 2. *Application of the Ohio Long Arm Statute*

Matrix argues that this Court has personal jurisdiction over Harmon pursuant to Ohio Rev.Code § 2307.382(A)(1). (Docket No. 12 at 4, n. 5). As stated above, Ohio Rev.Code § 2307.382(A)(1) allows jurisdiction over foreign defendants when the cause of action arises out of their "[t]ransacting any business in this state." *Id.* The gist of Matrix's argument for exerting jurisdiction under this section of the Ohio long arm statute is that Harmon transacted business in Ohio when it negotiated the settlement of the 1992 lawsuit in New Jersey through "numerous telephone and written communications with Matrix and its counsel in *Ohio.*" (Docket No. 12 at 1 (emphasis in original)). Thus, determining whether Harmon is subject to jurisdiction under Ohio's long arm statute will depend on whether negotiating and entering into a settlement agreement with an Ohio corporation amounts to "transacting business" within the meaning of the statute.

The case law interpreting the "transacting business" provision of Ohio's long arm statute provides little guidance as to whether Harmon's actions are sufficient to bring it within the scope of the statute. In *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.,* 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990), the Ohio Supreme Court defined "transact" as meaning:

> to *prosecute negotiations;* to carry on business; *to have dealings* ... [t]he word embraces in *its meaning the carrying on or prosecution of business negotiations* but is a *broader term then the word 'contract' and may involve business negotiations* which have been either wholly or partly brought to a conclusion.

*Id.* (quoting *Black's Law Dictionary* 1341 (5th ed., West 1979) (emphasis in original)). Beyond this definition, the Ohio Supreme Court interprets "transacting business" as a case-specific inquiry.

> R.C. 2307.382(A)(1) has given rise to a variety of cases which 'have reached their results on highly particularized fact situations, thus rendering any generalization unwarranted.' With no better guideline than the bare wording of the statute to establish whether a nonresident is transacting business in Ohio, the court must, therefore rely on a case-by-case determination.

*U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.,* 68 Ohio St.3d 181, 185, 624 N.E.2d 1048 (1994) (citations omitted).

■ Although the decision to enter into a settlement agreement rather then persist in litigation is arguably a business decision, Matrix must show that Harmon transacted business in Ohio in order to meet the requirements of the long arm statute. Matrix submits a set of eight letters to demonstrate that Harmon transacted business in Ohio. (Docket No. 12, Ex.

C). Of the eight letters submitted by Matrix, six letters are correspondence between the law firms involved in the 1992 New Jersey lawsuit, one is from Matrix and one is from Harmon. *Id.* Although all of the letters relate to the 1992 New Jersey litigation, only three of the letters make mention of the settlement agreement, and none of the letters appear directly related to the actual negotiation of the settlement agreement. *Id.* Without additional support for the proposition that Harmon "transacted business" in Ohio, this Court cannot conclude that Harmon has transacted business for the purposes of Ohio's long arm statute.

This conclusion is further supported by the nature of the settlement agreement. The only long-term obligation Harmon assumed by entering into the settlement agreement was to perpetually refrain from selling Matrix products. (Docket No. 12, Ex. A). Thus, the settlement agreement, though it contractually bound Matrix and Harmon to one another, does not contemplate any future relationship between the parties or contact between Harmon and the state of Ohio. Moreover, there is no evidence to suggest that Matrix and Harmon have had any contact with one another except as opposing litigants. The only contract that has ever existed between Matrix and Harmon is the settlement agreement, which "arises not from Harmon['s] ... desire to transact business in Ohio but rather from its desire to end litigation" initiated by someone else. (R & R at 8).

In sum, courts determine whether an out-of-state defendant has transacted business in Ohio on a case-by-case basis, with only the bare language of Ohio's long arm statute for guidance. *U.S. Sprint,* 68 Ohio St.3d at 185, 624 N.E.2d 1048. In this particular case, Matrix has not made the sort of showing that would convince this Court that Harmon has "transacted business" in Ohio within the meaning of Ohio's long arm statute. Therefore, this Court concludes that Ohio's long arm statute does not confer jurisdiction over Harmon in this case.

**B. *Personal Jurisdiction Under the Due Process Clause of the Constitution***

Even if this Court did have jurisdiction over Harmon under the Ohio long arm statute, it must also consider whether personal jurisdiction is appropriate under the due process clause of the constitution. The Magistrate Judge recommended that exercising personal jurisdiction over Harmon did not comport with the requirements of due process. Magistrate Judge Vecchiarelli analyzed the constitutional limits of jurisdiction as follows:

> Matrix fails to satisfy the requirements of the first prong of the *Southern Machine* test. The "purposeful availment" prong of the *Southern Machine* test dictates a defendant may be haled into a jurisdiction only if that defendant has "the kind of substantial relationship with the forum state that invokes, by design, 'the benefits and protections of its laws.'" *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1300 (6th Cir. 1989). "A mere collateral relation to the forum State" based on "random," "fortuitous," or "attenuated" contacts will not establish purposeful availment on the defendant's part. *Id.* Moreover, "with respect to interstate contractual obligations, ... 'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the regulation and sanctions in the other State for the consequences of their activities.'" *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

Matrix asserts that Hanson Stores purposefully availed itself of the privilege of transacting business in Ohio when it performed the following acts: (1) negotiated and entered into the settlement agreement with an Ohio corporation under which Hanson Stores agreed that it would not sell Matrix products; (2) engaged in negotiations, along with its counsel, which involved "extensive telephonic and written communications;" (3) transferred goods and money to and from Ohio; and (4) agreed to be subject to Ohio law with regard to the settlement agreement.

The mere existence of a contract between Harmon Stores and Matrix, an Ohio corporation, is insufficient to establish personal jurisdiction over Harmon Stores.[2] *See Calaphone* [sic] *v. Rowlette,* 228 F.3d 718, 722 (6th Cir.2000). The "quality" of the contacts, as opposed to their number, is essential to determining whether minimum contacts exist sufficient to establish personal jurisdiction. *See id.* In *Calaphalon* [sic], the Sixth Circuit held that an Ohio court would not have personal jurisdiction over an out-of-state defendant who had entered into an agreement with an Ohio plaintiff to work as a market representative (promoting plaintiff's products, informing plaintiff of market conditions, developing sales plans) outside Ohio. The Sixth Circuit determined that de-

fendant's phone, mail, and fax contact with the Ohio plaintiff and two physical visits to Ohio "occurred solely because [plaintiff] chose to be headquartered in Ohio, not because [defendant] sought to further [his] business there and create 'substantial and continuous consequences there.'" *Id.* at 723. The Sixth Circuit further noted that a choice of law provision in the contract stating that it was governed by Ohio law was not sufficient to demonstrate the defendant's purposeful availment because the defendant "did not make a deliberate affiliation with [Ohio] nor could [he] reasonably foresee possible litigation there." *Id.*

In the instant action, the contract at issue—a settlement agreement—arises not from Harmon Stores' desire to transact business in Ohio but rather from its desire to end litigation, which Harmon Stores did not initiate, in a United States District Court in New Jersey concerning claims arising from Harmon Stores' alleged actions outside of Ohio. The facts pertaining to the alleged breach did not occur in Ohio. Although Harmon Stores corresponded via telephone and letter with Matrix and its attorneys in Ohio, this correspondence was not made in an attempt to "reach out" beyond New Jersey to Ohio, but rather to prevent incurring liability in a New Jersey Court. *See Kerry Steel v.*

---

**2.** In a footnote, Magistrate Judge Vecchiarelli stated:

> Matrix asserts that *Cole v. Mileti,* 133 F.3d 433 (6th Cir.1998), requires that this Court to find sufficient minimum contacts exist for personal jurisdiction over Harmon Stores. In *Cole,* the Sixth Circuit held that if a "nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to [an] Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio." *Cole,* 133 F.3d at

436. However, *Cole* is distinguishable from the instant action in that the defendant in *Cole* was previously an Ohio resident who had a business relationship with the plaintiff in Ohio and the subject of the business transaction was a surety agreement. In the instant action, Harmon Stores had no prior relationship with Ohio and the subject of the transaction was an agreement to settle New Jersey litigation, not to further or promote its business.

(R & R at n. 2).

*Paragon Industries, Inc.*, 106 F.3d 147, 154 (6th Cir.1997) (no "reaching out" where defendant was contacted by plaintiff to initiate the transaction at issue and defendant never entered forum state).

With regard to the transfer of goods and money to Ohio, Matrix presents no evidence that this transfer had any significant impact on the Ohio economy. Although the letters evidence that Harmon Stores was shipping goods (samples of MATRIX products and other unspecified merchandise), they do not speak to the amount or the value of the merchandise. The letters also detail that two rather minimal checks totaling less than $120.00 were sent to Harmon Stores' counsel in New Jersey from Matrix's counsel in Ohio, with neither check going to Harmon Stores directly (one to counsel for copying expenses and one to the IRS). Further, it appears that all transfers of goods and money were a direct result of attempting to settle the New Jersey litigation.

Finally, the choice of law provision is insufficient to establish minimum contacts in the instant action. Harmon Stores would not reasonably foresee litigation in Ohio arising from an alleged breach of a settlement agreement which was entered into by the parties as a result of litigation in New Jersey. This holds particularly true because the allegedly breaching activities took place outside of Ohio. Further, the purpose of choice of law provision is to establish what law governs the contract, not to dictate the forum.

"Because Matrix has not sufficiently demonstrated that Harmon Stores purposefully availed itself of the Ohio forum, the assertion of personal jurisdic-

tion over Harmon Stores would offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). As such, this Court should dismiss the instant action.

(R & R at 6–9).

Matrix raises three specific objections to the Magistrate Judge's recommendation that this Court does not have personal jurisdiction over Harmon. It argues: (1) the Magistrate Judge erred in finding that Harmon had not availed itself of the privilege of transacting business in the state of Ohio; (2) the Magistrate Judge erred when she concluded that Harmon could not reasonably foresee litigation in Ohio; and (3) the Magistrate Judge erred in failing to address the second and third prongs of the Sixth Circuit's specific jurisdiction test as laid out in *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968).

### 1. *Matrix's First Objection: The Magistrate Judge Erred In Finding That Harmon Had Not Availed Itself Of the Privilege Of Transacting Business In Ohio*

In its objection to the Magistrate Judge's conclusion that Harmon did not purposefully avail itself of the privilege of transacting business in Ohio, Matrix contends that the pertinent facts in *Cole v. Mileti*, 133 F.3d 433 (6th Cir.1998), are "virtually identical" to the facts in this case and, therefore, the Magistrate Judge erred in declining to follow *Cole*.[3] (Pl's Objections at 4). Had the Magistrate Judge followed *Cole*, Matrix argues, she would have concluded that Harmon had purposefully availed itself of the privilege of transacting business in Ohio. Matrix bases this asser-

---

**3.** In fact, Matrix went so far as to assert, "What happened in *Cole* is exactly what hap-

pened here." (Pl's Objections at 1).

tion on the sentence in *Cole* that reads: "[i]f, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio." *Cole*, 133 F.3d at 436. In the alternative, Matrix argues that the clause of the settlement agreement which states that the agreement is to be governed and construed in accordance with Ohio law weighs in favor of jurisdiction over Harmon.

Upon *de novo* review, this Court finds *Cole* to be distinguishable from the instant case. Perhaps the most distinguishing fact of *Cole* and the present case is that the disputed contract in *Cole*, a surety agreement, arose out of a pre-existing business relationship between the plaintiff and defendant. *Cole* 133 F.3d at 435. In *Cole*, not only were the plaintiff and defendant business associates in Ohio during the 1970's, but the plaintiff purchased two hundred shares of stock in a film distribution company organized by defendant, lent the company $475,000, and became an officer and director of the company before the surety agreement was conceived of. *Id.* When the company's movie failed at the box office, defendant offered to buy out plaintiff's share of the company by assuming his indebtedness (plaintiff had to borrow money to finance his investment in the company). *Id.* Plaintiff accepted defendant's offer, and defendant agreed to repay the loan by 16 June 1985. *Id.* When defendant did not repay the loan as agreed, plaintiff was sued by the lender, and sought damages from defendant. *Id.*

In this case, there is no indication that any sort of business relationship between Matrix and Harmon ever existed, let alone one as extensive as that in *Cole*. To the contrary, the only contact that Harmon has had with Matrix and the state of Ohio prior to the institution of this lawsuit in Ohio has been through letters and telephone calls directly related to the 1992 litigation in New Jersey initiated by Matrix. Even the settlement agreement in the 1992 New Jersey lawsuit seems intended to preclude business dealings between Matrix and Harmon. Given the complete lack of any business relationship between Matrix and Harmon, let alone one as significant as in *Cole*, and the absence of any connection between Harmon and Ohio outside of 1992 New Jersey litigation initiated by Matrix, this Court concurs with the Magistrate Judge's view that *Cole* is not controlling in this case.

■ Matrix's argument that choice of law provisions weigh in favor of jurisdiction in a particular state is correct. *Burger King*, 471 U.S. at 482, 105 S.Ct. 2174. However, "such a provision standing alone would be insufficient to confer jurisdiction." *Id.* In *Calaphon Corporation v. Rowlette*, for example, the Sixth Circuit explained that "even though Rowlette was on notice that the contract was to be governed by Ohio law, [Rowlette] did not make a deliberate affiliation with that state nor could [Rowlette] reasonably foresee possible litigation there." 228 F.3d 718, 723 (6th Cir.2000). Thus, Matrix must make an additional showing that exercising personal jurisdiction over Harmon is appropriate. Matrix has failed to make such a showing. Therefore, Matrix's objection is overruled, and the Magistrate Judge's finding that Harmon did not purposefully avail itself of the privilege of transacting business in the state of Ohio is adopted.

### 2. Matrix's Second Objection: The Magistrate Judge Erred In Concluding That Harmon Could Not Reasonably Foresee Litigation In Ohio

In objecting to the Magistrate Judge's conclusion that Harmon could not reasonably foresee litigation in Ohio arising from

the breach of the settlement agreement, Matrix argues that litigation in Ohio is foreseeable for anyone who enters into a contract with an Ohio corporation.

Upon *de novo* review, this Court finds Matrix's argument unavailing. Matrix filed the 1992 lawsuit that gave rise to the settlement agreement at the heart of the instant case in the United States District Court for the District of New Jersey. (Docket No. 1, Ex. A at 1–2). Moreover, the alleged malfeasance that was the subject of both the 1992 lawsuit and the settlement agreement took place at least partly in New Jersey, but not at all in Ohio. "It is well settled that a federal court has the inherent power to enforce ... settlements entered into in cases originally filed therein." *Fox v. Consolidated Rail Corp.*, 739 F.2d 929, 932 (3rd Cir.1984) (citing *Pearson v. Ecological Science Corp.*, 522 F.2d 171 (5th Cir.1975)). *See also Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir.1976) ("It is well established that courts have the inherent power to enforce agreements entered into in settlement of litigation pending before them.") (citing *Kukla v. National Distillers Products Co.*, 483 F.2d 619 (6th Cir.1973)). Finally, the settlement agreement did not include a forum selection clause.

It is, therefore, not reasonably foreseeable that Matrix would choose to enforce the terms of the settlement agreement in Ohio instead of the District of New Jersey. Accordingly, Matrix's objection is overruled, and the Magistrate Judge's finding that Harmon could not reasonably foresee litigation in Ohio is adopted.

**3. *Matrix's Third Objection: The Magistrate Judge Erred In Failing To Address The Second and Third Prongs Of The Sixth Circuit's Specific Jurisdiction Test***

Matrix's final objection to the R & R is that the Magistrate Judge erred by not specifically addressing the second and third prongs of the personal jurisdiction test set forth by the Sixth Circuit in *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir.1968). The Magistrate Judge's finding that Harmon has not purposefully availed itself of the privilege of transacting business in Ohio precludes a finding that this Court's exercise of personal jurisdiction is permissible because all three prongs of the *Southern Machine* test must be met in order for the exercise of personal jurisdiction to be appropriate. *Southern Machine*, 401 F.2d at 381. Thus, the Magistrate did not need to address the second and third prongs of the test. Matrix's objection is overruled.

### *IV. Conclusion*

For the foregoing reasons, Matrix's objections to the R & R are overruled, the Magistrate Judge's R & R is adopted, and Harmon's motion to dismiss for lack of personal jurisdiction is granted. Accordingly, the plaintiff's claims are dismissed without prejudice.

IT IS SO ORDERED.

### *ORDER OF DISMISSAL*

This Court, having filed its Memorandum of Opinion and Order, hereby dismisses plaintiff's complaint without prejudice and not upon the merits. Each party shall bear its own costs.

IT IS SO ORDERED.